# Township of Newlin *versus* Davis.

1. A railroad company, upon constructing their road along the bank of a stream, built a bridge for travel over it, and closed up a fording previously used. *Held*, that the bridge became a public highway, and the township was liable for injury arising from its being negligently out of repair.

2. A county is responsible only for the bridges which it erects by virtue of the Act of Assembly.

3. The bridge having been built by the company under the authority of the General Railroad Law, the township had power to erect any superstructure on it to render it safe, and collect the cost from the company.

4. When a public officer neglects keeping the highways in repair, the municipality which he represents must answer for it.

5. Rapho *v.* Moore, 18 P. F. Smith 404 ; Meadville *v.* Canal Co., 6 Harris 66 ; Pennsylvania Railroad *v.* Duquesne, 10 Wright 223 ; Phœnixville *v.* Phœnix Iron Co., 9 Wright 135, followed.

　　January 19th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

[Township of Newlin *v.* Davis.]

Error to the Court of Common Pleas of *Chester* *county :* No. 105, to July Term 1874.

This was an action on the case, brought February 11th 1875, by Aaron Davis against the township of Newlin, for injuries to his horse and carriage, which had been thrown into the Brandywine creek, in consequence of a defect in the bridge, which he alleged it was the duty of the township to maintain.

On both sides of the Brandywine, where the bridge crosses it, are public roads; near the point of crossing there had been a road which crossed the creek by a ford. Some five years since, the Wilmington and Reading Railroad was constructed; the company then made this bridge across the stream and closed up the fording; the travel was thus compelled to pass over the bridge; subsequently a road was laid out by order of the Court of Quarter Sessions over the bridge. The plaintiff was the owner of a horse and carriage which were being used by another person, to whom he had lent them when the accident occurred.

The case was tried February 10th 1874, before Butler, P. J.

There was evidence that the bridge had no side rails; that in driving across the bridge the horse had frightened at a piece of plank nailed over a hole in the bridge; he commenced backing, and before he could be prevented, backed over the bridge into the creek, by which the horse, carriage and harness were injured.

There was much evidence bearing on the question of negligence; amongst which was, that the railroad company had not put any railing on the bridge, and that the township had frequently repaired the bridge.

The defendant's point was:

The defendant is not responsible for the condition of the bridge, not being liable for its maintenance or repair, and therefore upon the law and the evidence in the case, the verdict must be for the defendant.

The court answered the point in the negative.

In his charge Judge Butler said : * * *

" Did the defendant fail in its duty as charged? The defendant denies first, that any duty whatever rested upon it respecting the bridge—that it was in any way responsible for its condition; and second, denies that the bridge was not in proper condition. [The first position, just stated, is covered by a point presented to the court, which will be more maturely considered hereafter. At present we instruct you that (if the undisputed testimony bearing on this question is believed) the defendant is responsible for the condition of the bridge. It is true, the township could not have been required to build it; nor to replace it if swept away. If it had not been built, or was so removed, the public would pass through the water, as at other fords. But with the bridge there, the public travelling that road *must* pass over it; the ford is

[Township of Newlin v. Davis.]

obstructed. It is unimportant that they could cross above, or elsewhere; it is their right to pursue *this* road, and in doing so they are compelled to pass over the bridge. It was built before the road was laid out (in anticipation of it); but this also is unimportant. The defendant by keeping and maintaining it there, has adopted it as, and made it, a part of the highway, inviting and compelling those travelling there to pass over it.] Under these circumstances the duty is imposed on the defendant to keep it while there, in proper condition for use, as safe, considering all the circumstances, as it is reasonably practicable to make it." * * *

The court then submitted the question of negligence to the jury.

The verdict was for the plaintiff for $83, and the court afterwards entered judgment for the plaintiff on the verdict.

The defendant took a writ of error and assigned for error the answer to the point and the part of the charge in brackets.

*J. W. Barnard* and *F. C. Hooton*, for plaintiff in error.—The railroad company having erected the bridge for its own benefit, they are liable for its repair : Phœnixville *v.* Phœnix Iron Company, 9 Wright 135 ; Rex *v.* Inhabitants of Lindsay, 14 East 317 ; Pennsylvania and Ohio Canal Company *v.* Graham, 13 P. F. Smith 297. Bridges are not always esteemed part of a highway : Rapho Township *v.* Moore, 18 P. F. Smith 404.

*J. S. Futhey,* for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, February 1st 1875.

The injury of which the plaintiff complained, in the court below, resulted, according to the finding of the jury, from the negligence of the supervisors of Newlin township, in not providing proper safeguards, for the bridge in question, over the Brandywine creek.

The road was made, and the bridge built, by the Wilmington and Reading Railroad Company, under the provisions of the Act of February 19th 1849, in order to supply the old improvements. We also understand, that subsequently to the building of the bridge, a road was laid out across it by the ordinary proceedings under the road law. In either case the road and bridge became a public highway. The evidence shows that they were so regarded, not only by the public, which constantly used them as such, but also by the township officers, who took charge of, and put such repairs upon them as they thought necessary.

To whom then was committed the maintenance of this bridge ? Unless something is shown to the contrary. this duty must devolve on the county or township : Meadville *v.* The Canal Company, 6

Harris 66 ; Rapho *v.* Moore, 18 P. F. Smith 404.    But the county can be made responsible only for those bridges which it erects under and by virtue of the Act of Assembly.    As this was not such a bridge, it follows that the county had no control of or power over it, and hence had no duty to discharge with reference to its maintenance.    Primâ facie then this obligation rests upon the township.

But it is argued, that as it was built by the railroad company, as part of the old road, which it was bound to supply, therefore that company was responsible for its proper construction, and also for its maintenance.    That this is true so far as the first part of this obligation is concerned, there is no doubt; whether it is so as to the latter part, we give no opinion.    But admitting the whole proposition to be correct, have the supervisors no duties with reference to this part of this highway ?    The bridge was defective and dangerous ; that the jury have found.    That it was a necessary part of a public road, over which persons travelling along that road were obliged to pass, is not disputed ; and we think it beyond question, that not only had the supervisors full power and authority to affix any superstructure that would render the bridge safe, but they had the right.to charge the cost thereof over to and collect it from the railroad company : Pennsylvania Railroad Co. *v.* Duquesne Borough, 10 Wright 223 ; Phœnixville *v.* The Phœnix Iron Co., 9 Wright 135.    Having therefore the fact of the public road fully established, and observing also, that the law has clothed the township officers with the most ample power over it, and this with especial view to the public welfare and safety, we think it will not do to say that these officers have no duties concerning it which they are legally bound to discharge.    Such a construction of the law would lead to the most grave consequences.

Suppose some private individual, owner of the land over which a road passes, cuts a race across that road, as he may of right do, he must bridge it at his own expense ; but in the event of his neglect of this duty may the supervisors permit such an obstruction to remain, on the ground that the duty to bridge or fill it up, was with him who created it, and therefore they and their township have no responsibility with respect to it ?    Or take the same case, and suppose he does build the necessary bridge, he is bound to keep it in repair : Woodring *v.* Forks Township, 4 Casey 355.    But if the bridge dilapidates, and he does not repair it, may the supervisor refuse so to do, and thus risk the life, limbs and·property of the citizen ?    Conceding the doctrine as contended for by the plaintiff in error, that there is no liability upon townships in the cases above mentioned, and the result must be, that the party injured may be wholly without redress ; for he who created the obstruction, from which the damage arose, may be insolvent, dead, or out of the state.

[Township of Newlin v. Davis.]

The above stated examples, which are applicable to a corporation as well as to a person, for a corporation is but an artificial person, and the consequences flowing from them, demonstrate that to exempt the township from liability in the case in hand, would violate the plainest principles of common sense. The public authorities are charged with the maintenance of the highways; they have abundant power for that purpose. That they should keep them in a safe condition is of the highest importance to the citizen, absolutely necessary for his safety and welfare, and to that end he pays his taxes. When, therefore, the officer neglects this duty, with which he is charged, the municipality which he represents must answer for it.

The argument, that the bridge was a structure too expensive for the township to erect, has no force whatever, as it was not called upon to erect it. The expense necessary to make it safe was but trifling; one witness says it would not have exceeded twenty dollars. This surely would not have been too burdensome for this township; but if it were so, the supervisors might have obviated all danger by closing the bridge up, or removing it, and by opening the old ford by which the creek was formerly crossed.

Judgment affirmed.