## Kieffer *v.* Hummelstown Borough, Appellant.

[Marked to be reported.]

*Negligence—Roads—Obstructions—Boroughs.*

To entitle a person who is injured on a public road to recover damages from a borough or township, he must show that the ordinary needs of public travel, conducted in the ordinary way, had not been anticipated and provided for, and that his injury was a natural and probable consequence of the neglect of duty on the part of the borough or township officers.

In an action against a borough for personal injuries it appeared that, at the point where the accident occurred, the road was thirty-three feet wide. On the side of the road was a pile of stones one hundred and fifty feet in length, about five or six feet in width, and about eighteen inches in height. The rest of the roadway was passable but the best part of it was next the stone pile. The plaintiff was familiar with the road and with the stone pile. On the day of the accident as he was driving on the portion of the road next to the stone pile, his horses became frightened by the firing of guns, and in their struggle the saddle horse on which plaintiff was riding fell against the stone pile and plaintiff's leg was crushed. *Held,* that plaintiff was not entitled to recover, as the accident was caused by an extraordinary circumstance against the consequences of which the borough was not bound to take precautions.

Argued May 30, 1892. Appeal, No. 4, May T., 1892, by defendant, from judgment of C. P. Dauphin Co., June T., 1890, No. 416, on verdict for plaintiff, Joseph Kieffer. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for personal injuries.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

" The circumstances are what you have heard testified to by the witnesses. As you have heard, the plaintiff was driving along the road on the 1st day of January, 1890. Now then, taking into consideration the fact of his being there with his team at that time, considering what kind of a team it was from all that you know about it from the evidence, and the fact that the shooting was going on as detailed, and what the plaintiff did as to his driving, did he act as a person of ordinary prudence and care ought to have acted under those circumstances ? If he did, it was not negligence. [It was argued by the counsel for the defendant that if he knew the shooting was going on and apprehended danger he should have stopped.

That is a question for you to consider. Should he have stopped? Should he have gone on? What would he have done if he had stopped? All that you have to consider.] [1] It is a question for you and upon that you are to determine whether he acted carelessly, whether he failed to act as a man of ordinary prudence would have acted. If he did not, he was not negligent, and if he did he was negligent, and if he was negligent his negligence contributed to the accident, and he cannot recover no matter whether the defendant was negligent or not.

" In determining whether he acted as a man of ordinary prudence, you have to consider the circumstances as they were at the time. You are not to determine that because the accident happened he necessarily was negligent. You are to consider what a prudent man would have done and ought to have done under these circumstances, and knowing just what he did know then. [Was it a prudent thing for him to do to drive on? Would it have been a prudent thing to ask those people to stop shooting, and would they have stopped if he had asked them?]" [2]

Defendant's points, refused, were as follows :

" 1. From the evidence in the case the plaintiff was guilty of contributory negligence in driving on after he saw the shooting, and was fearful his horses might run away, and the verdict must be for the defendant." [3]

" 2. All the evidence in the case shows that the injury to plaintiff resulted from the want of due care upon his part and the verdict must be for the defendant." [4]

" 3. Under all the evidence the verdict must be for the defendant." [5]

Verdict and judgment for plaintiff for $800. Defendant appealed.

*Errors assigned* were (1, 5) instructions, quoting points and charge as above.

*J. C. McAlarney*, with him *H. B. Houck*, borough solicitor, and *F. J. Shaffner*, for appellant.—Defendant was guilty of contributory negligence. He knew of the stone pile, he knew of the shooting, and voluntarily undertook to test his ability in managing his team, and was hurt in the experiment. He was

bound to avoid a known danger: Pittsburgh South. Ry. v. Taylor, 104 Pa. 306; Payne v. Reese, 100 Pa. 301.

This being a country road, the borough was not bound to keep the whole width of the road from fence to fence free from obstructions: Dillon, Mun. Corp., § 1008; Monongahela City v. Fisher, 111 Pa. 13. Supervisors are not bound to furnish roads upon which it will be safe for horses to run away: Plymouth Twp. v. Graver, 125 Pa. 24; Horstick v. Dunkle, 1 Adv. R. 73. In the absence of evidence that the stones were a dangerous obstruction, the charge was clearly wrong: Worrilow v. Upper Chichester, 1 Adv. R. 622; Walters v. Wing, 59 Pa. 211; Forker v. Sandy Lake Borough, 130 Pa. 123.

A person who has knowledge of an obstruction in a highway must exercise caution: Erie v. Magill, 101 Pa. 616; Forks Twp. v. King, 84 Pa. 230; Crescent Twp. v. Anderson, 114 Pa. 643; Flemming v. Lock Haven, 15 W. N. 216; Erskine v. McNichol, 13 W. N. 224; Wilson v. Charles City, 8 Allen 137; Chartiers Twp. v. Philips, 122 Pa. 601.

*Levi B. Alricks, J. C. Nissley* with him, for appellees.—It was proper to submit the question of negligence to the jury: Delaware etc. R. R. v. Jones, 128 Pa. 314; Pa. Canal Co. v. Bentley, 66 Pa. 30. The measure of duty in the case was of a shifting nature and it would have been error to have withdrawn the case from the jury. Concurrent negligence is not to be presumed, it must be proved: Beatty v. Gilmore, 16 Pa. 463; Erie v. Schwingle, 22 Pa. 384; Bush v. Johnson, 23 Pa. 209.

The charge of the court did not conflict with Chartiers v. Philips, 122 Pa. 601. In Horstick v. Dunkle, 29 W. N. 385, there was no defect in the road bed, the pond being fifteen feet from the edge of the road. But here there was an actual obstruction on the road itself as in Plymouth Twp. v. Garver, 125 Pa. 24; Jackson Twp. v. Wagner, 127 Pa. 184, and Wagner v. Jackson Twp., 133 Pa. 61.

The evidence disclosed that the road at the point where the accident occurred was in a bad condition except for a space wide enough for a wagon to pass next to the stone pile. The mud-holes, ruts and the stone pile were the elements of danger which called for the submission of the case to the jury:

KIEFFER *v.* HUMMELSTOWN BORO., Appellant. 307

Wood v. Bridgeport Boro., 143 Pa. 171 ; Burrell Twp. v. Uncapher, 117 Pa. 353,

OPINION BY MR. JUSTICE GREEN, October 3, 1892.

At the point where the accident in this case occurred, the road was upwards of thirty-three feet in width. On the one side of the road, and next the fence, there was a long narrow pile of stones about one hundred and fifty feet in length, about five or six feet in width and about eighteen inches in height towards the road and sloping backwards to about two feet in height at the fence. The entire remaining width of the road was available for, and used as, the traveled way. It was testified that owing to the driving of heavy teams over it, loaded with stone, and for a considerable time, it was muddy and cut up and the best part of the road was that which was next the stone pile. The road was much driven over every day and was of ample width from the stone pile to the opposite side for all purposes of public travel. The plaintiff was perfectly familiar with the road and was constantly traveling over it. On the day of the accident he had taken a load of corn to the mill and was returning over the road. As he came to the place of the accident, he noticed some boys shooting at pigeons. He said : " The mules didn't mind it as well as the horses, but I attended well to my business and I thought I had got along pretty well. I had passed some men along the road on both sides, with guns, and as I had passed those there was a shot fired and scared my horses. I suppose I could have got them under control when the second shot was fired. They became unmanageable and I could not do anything, and they ran towards the stone pile that was there and the saddle horse fell. I often wondered after that I could not keep my foot out from under but I could not. They were two strong horses that I thought I could well manage, but the saddle horse fell. I was fast up to my knee lying on the stone pile."

On cross-examination he was asked : " Q. How did it happen that the horse fell ? A. When the horses frightened the off side horse ran over the tongue and in tussling and tangling around there the horse fell. I never thought of the horse falling. The horse I suppose weighed fourteen hundred. Q. How

far were you away from the stone pile when the off horse jumped over the tongue? A. We were against the stone pile. . . . Q. The off horse jumped over the tongue to the saddle horse? A. Yes sir. Q. Where was this? A. This was close to the stones. Q. You were not close to the stones when he got over? A. I was just about at the stones. Q. Was there considerable struggling going on at that time? A. Yes sir. Q. Between the off horse and the saddle horse? A. Yes sir. Q. In that struggle they got on the stones and you got under the horse? A. The horse fell in the struggle."

The plaintiff also testified: " Q. You say that that shooting frightened your horses? A. Yes sir, I have been traveling along there as I have said, and never had any trouble. The most of the time I was on the wagon when I had an empty wagon and left my horses walk along. . . . Q. The one horse that you were riding fell? A. Yes sir. Q. He was on the near side? A. Yes sir. Q. The saddle horse? A. Yes sir. Q. He was the farthest from the stones? A. No sir, the nearest. Q. Then the horse next to the stone pile fell? A. Yes sir. Q. What made him fall? A. The struggle, I suppose, of the off side horse. He was on the stones and naturally they were struggling there on the stones and finally the horse fell which was a great mystery to me."

He further said he had commenced hauling stones over that road in March, 1889, and continued to do so right along until the day of the accident, January 1, 1890, and that in the summer of 1889 he noticed a man digging a foundation between the stone pile and the fence. He said: " I asked him what they were going to do, and he said they were going to put up a wall."

The plaintiff's witness C. H. Hoffer, who was a surveyor and made a draft of the location, testified that when he made the draft there was no stone pile there, but in the place of it there was a stone wall. It would seem from this that the stones were gathered at this place for the purpose of building a stone wall there, and that it was actually built between January, 1890, and the time of the trial in May, 1891.

The plaintiff was asked: " Q. Didn't you say to Mr. ───── that you never blamed the stones, but you blamed the shooting

match?    A. Yes, they scared the team.    The stones never scared my horses but the shooting did."

Other witnesses were examined for the plaintiff but gave substantially the same account of the occurrence.    One of them, John Grove, testified that the stones sloped towards the road, that there was a gutter there where they were dumped in, and at places "the embankment and the road run as full as the stones," to use his own expression.    In other words at those places they were nearly or quite on the same level.    He was asked: "Q. Don't the stones slope down to the road? A. Yes sir.    Q. Don't the wagons get on the stones to keep out of the mud?    A. Yes sir they try to get the solid ground. Q. How did Mr. Kieffer drive; towards the stones?    A. Yes sir, along side of the stones.    The same side of the street that the stones are on.    Q. Where was the track of the wagon at the time you picked him up; was it in the usual track?    A. I think it was.    Q. The horse had jumped over on to the stone pile?    A. The off side horse had got over the pole and I suppose shoved the saddle horse over on to it."

From the foregoing testimony and statement of facts, all proved by the plaintiff, the case is brought directly within several of our recent decisions which control its determination.    The pile of stones was evidently being accumulated by the authorities of the defendant corporation for some time, for the purpose of building a stone wall, to which use they were applied.    They were piled on one side of the road not used for traveling purposes, and occupied only five or six feet of the entire span of the roadway.    The space left for travel was twenty-six or seven feet and there was no reason why the whole of it could not be used for travel.    The road was much traveled and appears to have amply sufficed for that purpose. There was no collision of the plaintiff's team with the stone pile and the horses were not frightened by the stones.    They were however frightened by the shooting and in the struggle of one of them in jumping over the pole, the other, on which the plaintiff was riding, was caused to fall on the stones and the plaintiff's leg was caught under the horse and injured.    The stone pile did not produce either the fright of the horses or the fall of one of them.    The shooting frightened the horses, and the fall of one of them was occasioned by the struggles of

the other.   The stone pile happened to be where it was, at the very place where the horses became frightened, but it was no obstruction to the travel of the road, being entirely to one side.   If the wall had then been built we see no reason why the accident would not have happened just as it did, but, whether it would or not, the physical presence of the pile of stones neither frightened the horses nor obstructed the travel. We fail to see therefore upon what principle the defendant can be held liable for the plaintiff's injury.

In Jackson Township v. Wagner, 127 Pa. 184, we said: " Township officers are bound to anticipate and provide against the ordinary needs of travel, conducted in the ordinary manner, and to remove obstructions and defects which would naturally or probably cause injury to the traveler along the highways ; but the township is not an insurer against all possible accidents, nor is it bound to anticipate the danger to which a broken wagon or a frightened horse may expose the driver. Such a burden would be too heavy for any township to bear and the law does not impose it.   The general rule is well stated in Hey v. Philadelphia, 81 Pa. 44, to be that 'roads and bridges are made for ordinary travel; if they fulfill such purpose they are sufficient, and those in charge of them are not responsible for extraordinary accidents occurring on them.'" In that case a pile of stones taken from a quarry had been accumulated along the side of the road, about twenty-five feet in length, and at places several feet high, leaving an unobstructed roadway about fifteen feet wide to a water way on the other side.   Near the stone pile there was a hole or depression in the roadway caused by a washout.   The plaintiff's horse had passed the stone pile when he became frightened and turned around and went back towards the stone pile.   The wagon was broken in turning and ran on three wheels and the hub of broken one, till the stone pile was reached, when the hub of the broken wheel struck it, overturning the wagon and injuring the plaintiff.   Our Brother WILLIAMS in commenting upon the facts of the case said : " The question is whether this road was obstructed so as to interfere with its ordinary use, and whether such obstruction caused the injuries. . . . The dragging axle drew horse and wagon to one side of the road so that the axle struck the stone pile and the wagon was overturned and the

plaintiff hurt. Now the question is not whether a broader road would have enabled the plaintiff to pass along safely with her frightened horse and disabled wagon, but whether the road was broad enough and good enough for the purposes of a highway in that place. Was it safe for the purposes for which it was made, and did it accommodate the traveling public using it in the ordinary manner, with reasonable facilities for travel. That an accident did happen is clear but that does not settle our question. It is necessary to inquire further whether the accident was the natural or probable result of any act or omission of the township officers, which rendered the highway unsafe for the purposes of travel, conducted in the ordinary manner and by the ordinary means of conveyance."

As the evidence in the present case clearly shows that there was ample space left for the roadway, and that the accident was not the natural or probable result of any act or omission of the borough officers which rendered the highway unsafe for the purposes of ordinary travel, it follows that the third point of the defendant should have been affirmed requiring a binding instruction to find for the defendant.

In the more recent case of Worrilow v. Upper Chichester Township, 1 Advance Reports, 622, the judgment below was reversed without a venire upon the same course of reasoning as in Jackson Township v. Wagner. Our Brother HEYDRICK, reviewing the testimony, said: " To entitle the plaintiff to recover it was therefore not enough to show that he sustained an injury upon the highway, and that he was free from contributory negligence. He must also show that the ordinary needs of public travel, conducted in the ordinary way upon this road, had not been anticipated and provided for, and that his injury was a natural and probable consequence of the neglect of duty on the part of the township officers. Failing upon either point he failed to make out his case."

In the present case there was no testimony showing or tending to show, that the accident which caused the plaintiff's injury was either the natural or probable consequence of the presence of the stone pile. The plaintiff himself said he always got along, in passing this place, without any difficulty, on account of the stone pile, and that his horses did not frighten at the stone pile but at the shooting. Now the shooting

was an extraordinary circumstance for which the borough was in no sense responsible, and against the consequences of which they were not bound to take precautions. As there was abundant space of roadway to accommodate all the passing travel, outside the wall, and no proof whatever that it was in any respect insufficient or defective in failing to provide for all the ordinary travel conducted in the ordinary way, we are of opinion that there was nothing in the testimony upon which a recovery could be based. In the latest case of Schaeffer v. Jackson Township, 150 Pa. 145, we have adhered to and again applied the doctrine of the two cases above cited. It follows that the judgment of the court below cannot be sustained.

Judgment reversed.