# Olive Blanche Yoders, by her next friend, George W. Yoders, Appellant, *v.* Amwell Township.

172    447
177    215
172    447
180    359

172    447
192    210

172        447
20 SC °165

172        447
21 SC °185
21 SC °458

172    447
26 SC ³431

172        447
28 SC ¹549

172        447
e 29 SC 237

172    447
f41SC°124

*Negligence—Townships—Remote and proximate cause.*

In cases of mere negligence, aggravated by no element of malice, to ascertain whether the negligence be the proximate cause, it must appear that the injury was the natural and probable consequence of the negligence—such a consequence, as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer.

*Negligence—Township—Bridges—Guard rails—Proximate cause.*

Township authorities are bound to foresee that a bridge may be crossed in the nighttime by a spirited horse, and that such horse may take fright, and if they neglect to place a guard rail upon a narrow bridge, and an injury result from the fright of such a horse in the nighttime, which could have been guarded against by a rail, the negligence of the township authorities is the proximate cause of the injury.

Township authorities are bound to know that the fright of a horse is an ordinary circumstance, and to be expected, and that his conduct when in fright may be unreasoning, insane and unlooked for; and they cannot excuse their negligence in failing to properly guard a bridge by asserting that they could not foresee the particular freak of conduct in a terrified horse.

Where township authorities neglect to provide guard rails for a narrow bridge, and a horse attached to a buggy passes safely over the bridge in the nighttime, and then takes fright, and backs the buggy onto the bridge, and over its side, injuring the occupants of the buggy, the negligence of the township authorities is the proximate cause of the accident, and the township is liable for the injuries.

A young man took two young women to a church sociable in a one horse buggy on a dark night. On their return about midnight they crossed a narrow bridge which was not protected by a guard rail. Just as they got on the bridge, the plaintiff, a girl fifteen years old, accidentally dropped her hat from the buggy. The driver, however, did not stop, but continued over the bridge, and stopped about fourteen feet from it. He then gave the lines to the older girl, who had some knowledge of horses and experience in driving. He then went back for the hat. While he was gone the horse turned towards the side of the road, and took fright and quickly backed the buggy on the bridge, and over the side of it, and the plaintiff was injured. At the point where the horse was stopped there was a high bank with projecting rocks, and on one side of the bridge a spring ran over the rocks making the usual sound of a waterfall. *Held*, that the neglect of the township to properly guard the bridge was the proximate cause of the accident, and that the township was liable in damages for the injury.

*Practice, S. C.—Adjudicated cases as precedents.*

In determining whether a conclusion. of law in any adjudicated case is a precedent in a subsequent one, the value of the first, usually, is measured by its similarity or dissimilarity to the second in its controlling facts; the conclusion, to be of any value as a precedent, must be taken as applicable to the facts as assumed by the court; they, as concerns the judgment, are the facts, and whether existing or nonexisting, either prompt or compel the conclusion of law that determines the judgment.

Argued Oct. 23, 1895. Appeal, No. 223, Oct. T., 1895, by plaintiff, from judgment of C. P. Washington Co., on verdict for defendant. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Trespass for personal injuries. Before McIlvaine, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

Granting, now, that the travel on this country road was such that it was negligence on the part of the township in not erecting a guard or barrier between the ends of the two pieces of fence along the west side of the bridge, as claimed by the plaintiff, the question then arises, was the failure to erect a barrier at the west side of the bridge the proximate cause of the injury suffered by the plaintiff. The facts bearing on this question and to which we have referred are, as we have said, undisputed, and this casts a duty on the court which we would much rather have had cast on the jury.

While it is undoubtedly true as a general proposition that the question of proximate cause is for the jury, yet it has been repeatedly held that where there are no disputed facts the court must determine it. [In our opinion, the dropping of her hat by the plaintiff, the subsequent stop to regain it, and the backing of the horse in such a way as to drive the hind wheels of the buggy to and over the west edge of the bridge, was the proximate cause of the accident; the negligence of the township, if it was negligent in not putting up a barrier (granting that such a barrier would have withstood the force of a rapidly backing horse), was the remote cause of the accident.] [1]

The negligent act of the township—not putting up a barrier—had no relation whatever, or in no way contributed to or superinduced the dropping of the hat, the stop after safely crossing the bridge, or the backing of the horse in the manner he did.

[The act of the horse and the failure to put up a barrier did not concur in bringing about the injury; they were not causes operating together at the same time to bring about the accident. But they were distinct, successive and unrelated causes. The backing of the horse, after the stop to get the hat, was an independent, unrelated cause, without which the inflicting of the injury would not have happened. It was the first or proximate cause of the injury; the want of a barrier the second or remote cause.] [2] [The backing of the horse was the efficient and responsible cause of the infliction of the injury, with which the absence of a barrier was in no way related.] [3] [Had a barrier, such as would have relieved the township of the charge of negligence, been erected, the rapidity with which the horse was backing, and the force he was applying to the buggy, might have sent the buggy over the bridge. In other words, the accident was caused, brought about, set in motion, by the backing horse, independent of anything the township had done or left undone; and the erection of a guard rail would have at most only minimized the consequences of the accident.] [4] [It may be conceded that the absence of a guard rail made the consequences of the accident more serious, but as the absence of the guard rail did not bring about or help to bring about the first accident, to wit: the uncontrollable action of the horse, it was a remote and not a proximate cause of the plaintiff's injury.] [5]

Again, the township's road commissioners were only required to provide against what might ordinarily happen in the ordinary use of this road, considering the number of people that traveled upon it and the manner in which it was used. [The accident here was extraordinary in its character. It was not such an accident as under the circumstances might and ought to have been foreseen by the road commissioners.] [6] I can see how the want of a guard rail on a bridge like this would be the proximate cause of an accident. If a horse going upon this bridge would frighten at the narrowness of the bridge seeing the drop of six feet at either side, and the driver by reason of the surroundings would become nervous and unable to hold the horse, and he would jump or back over the side of the bridge, then the absence of a guard rail might be considered the proximate cause. The condition of the bridge would, in such a case, start the series of acts that would culminate in the final accident. In all

the reported cases that we have been able to find where injury was done by going over an embankment or off a bridge, it appears that the omission of the municipality to do something it ought to have done brought about or started or helped to bring about or helped to start the accident, and did something more than aggravate the consequences of the first accident, brought about by some other independent cause.

[Under the undisputed facts of this case the question—"Is the township liable?" is a question of law, and must be determined by the court, and we instruct you that it is not liable; the proximate cause of the plaintiff's injury was the unruly conduct of the horse; and the township having done nothing either directly or indirectly that caused it to act in this way, it is not legally responsible for the consequences that followed as succeeding events in a series of accidents. We instruct you to return a verdict in favor of the defendant.] [7]

The defendant has asked us to charge you as follows:

1. Under the undisputed evidence of the case, the negligence of the township was not the proximate cause of the injury, and the plaintiff cannot recover. *Answer*: Affirmed. [8]

2. Under all the evidence in the case the verdict should be for the defendant. *Answer*: Affirmed. [9]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–9) above instructions, quoting them.

*John C. Bane,* for appellant.—The injury to the plaintiff was the natural and probable consequence of the negligence of the township in not erecting side rails or barriers on the bridge, and it was such a consequence, as under the surrounding circumstances of the case, might and ought to have been foreseen by the supervisors, as likely to flow from their act: Sturgis v. Kountz, 165 Pa. 358; Scott Twp. v. Montgomery, 95 Pa. 444.

It is a matter of common information that horses will shy at different objects, and it therefore becomes the duty of the supervisors so to keep the roads, that teams will not be overset by this vice in horses: Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276; Newlin v. Davis, 77 Pa. 317; Hey v. Philadelphia, 81 Pa. 44; Burrell v. Uncapher, 117 Pa. 353; Plymouth Twp. v. Graver, 125 Pa. 24; Jackson Twp. v. Wagner, 127 Pa. 184.

The rulings in the case of Township of Chartiers v. Phillips, 122 Pa. 601, are not applicable to the case at bar.

*J. C. Ewing, M. L. A. & B. E. McCraken* and *James Q. McGiffin* with him, for appellee.—It is undoubtedly true, as a general proposition, that the question of proximate cause is for the jury; yet it has been repeatedly held that where there are no disputed facts the court must determine it: West Mahanoy Twp. v. Watson, 112 Pa. 574.

The immediate and not the remote cause is to be considered. This maxim is not to be controlled by time or distance, but by the succession of events. The question is, did the cause alleged produce its effect without another cause intervening, or was it to operate through or by means of this intervening cause: Hoag v. The Lake Shore and Michigan Southern Railroad Company, 85 Pa. 293; Township v. Watson, 116 Pa. 344.

In determining what is proximity of cause the true rule is that the injury must be the natural and probable consequence of the negligence; such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act: Herr v. Lebanon, 149 Pa. 222; Worrilow v. Twp., 149 Pa. 40; Shaffer v. Jackson Twp., 150 Pa. 145; Kieffer v. Hummelstown Boro., 151 Pa. 304.

OPINION BY MR. JUSTICE DEAN, January 6, 1896:

In Amwell township, Washington county, is located a public road, leading from another, called Brush Run road to the National pike; it is a shorter cut from the country and a number of villages into the town of Washington than other better maintained roads, and while not so generally traveled as the others, yet in the winter and spring is much used. It is known as the Mike Moninger road. On it is a bridge of one span over a small stream; the bridge is nine feet between the abutments, and the floor extends over them, making it fourteen feet long; the width of the plank roadway is about twelve feet; height of floor above bed of stream about five and one half feet; the approaches on each side are short, and somewhat steep. The roadway curves just at the bridge, in consequence, more care is demanded in crossing than if it were straight; the bridge

itself was wholly unprotected by guard rails, though there was some protection of the approaches at one end by a fence.    The general direction of the road is north and south; at the north end of the bridge is a high bank with projecting rocks covered with bushes and briers; on the one side of the bridge a spring runs over the rocks, making the usual sound of a waterfall; one of the witnesses stated, "it was a scary place."

The plaintiff is fifteen years of age, the daughter of a farmer living in the township, and through his farm runs the road. On the 28th of June, 1884, in the evening, a young man, W. A. Watson, called at the home of plaintiff with a one horse buggy, and took her with an older sister, Mary, to a "church sociable;" about midnight, the three started to return home in the buggy, Watson driving; the night was dark; just as they got on the bridge, the plaintiff accidentally dropped her hat from the buggy, but when told of it, Watson, as a matter of prudence, drove over the bridge first, and stopped about fourteen feet from the plank on the north end; then, giving the lines to Mary, the older sister, got out and went back to pick up the hat; Mary had knowledge of horses, also had some experience in driving; immediately after Watson started back for the hat, the horse turned to the side of the road in the direction of the rocks and bushes; Mary pulled him back by the lines into the road; just then, he took fright and quickly backed the buggy on the bridge, Mary endeavoring to urge him forward; the buggy was backed off the side of the bridge, the two girls falling backwards into the top, the buggy on them and the horse partly on the buggy; before the buggy was off the bridge, Watson ran up, caught the horse by the head, and ineffectually tried to stop him from backing.    The plaintiff was seriously injured.    Alleging this resulted from the negligence of the township in not maintaining guard rails on the bridge, she brought this suit for damages.    The facts, so far as we have stated them here, were not in dispute at the trial.    The learned judge of the court below instructed the jury in answer to defendant's first written point, that on the undisputed evidence, the negligence of the township was not the proximate cause of plaintiff's injury, therefore plaintiff could not recover, and the jury accordingly found for defendant; from the judgment entered on that verdict, plaintiff now appeals, assigning for error the peremptory instruction of the court.

The two questions on which the issue turns are : 1. Was the township negligent? If so, 2. Was that negligence the proximate cause of plaintiff's injury?

The answer to the first question was for the jury, but as the learned judge of the court below, on the undisputed facts, declared, as matter of law, any negligence of defendant was not the proximate cause of the accident, we must assume, for purposes of the case before us, defendant negligently left an open roadway, only twelve feet wide without guard rails on a bridge used by the traveling public. The duty of defendant must be measured by the ordinary and usual demands of the traveling public in that locality. Travel by vehicles of extraordinary weight, or by animals of extraordinary or strange habits, the authorities were not bound to foresee and provide for. But the ordinary methods of travel by horses, buggies and wagons, they ought to have foreseen; and made reasonable provision for the safety of the public on the highway. If this horse had taken fright when on the bridge, and because of the absence of guard rails backed the buggy off, we think no one, in the face of our numerous adjudicated cases, would have questioned the answerability of the defendant. In Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276, one of the animals shied, and the team was precipitated into an ore excavation alongside the road, where there were no guard rails; the township was held liable. In Twp. of Newlin v. Davis, 77 Pa. 317, the bridge had no guard rails; the horse frightened at a piece of plank and backed off; the township was held liable. In Scott Twp. v. Montgomery, 95 Pa. 444, from some unknown cause, the horse suddenly shied, and sprang off the road down a steep bank; there was no barrier or guard rail; the defendant was held answerable. In Hey v. City of Philadelphia, 81 Pa. 44, the horse took fright at the whistle of a locomotive, sprang over a wide roadbed down a declivity into the river; there was no guard rail; the city was held responsible. And so we might cite many other cases to the same point. The absence, in view of the circumstances, of reasonable safeguards for ordinary travel, was held, in all of them, to be the immediate and proximate cause of the injury.

If, then, the defendant would have been answerable for damages resulting from its negligence, had the horse from fright

plunged over or backed off the bridge, when being driven over it, does the fact that he backed the buggy on and then off the bridge, after being fourteen feet beyond it, relieve defendant from liability ?

When, as here, the facts are not disputed, at least not controverted, the conclusion is often a matter of law for the court; and it may be conceded on these facts, the application of the maxim, causa proxima non remota spectatur, is not free from difficulties. In cases of mere negligence, aggravated by no element of malice, to ascertain whether the negligence be the proximate cause, it is stated by PAXSON, J., in Hoag v. R. R. Co., 85 Pa. 293 : " The injury must be the natural and probable consequence of the negligence—such a consequence, as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer." And, as is remarked by BLACK, C. J., while discussing the same doctrine in Pittsburg v. Grier, 22 Pa. 54 : " It is not the law, that men are responsible for their negligence only to the extent of the injuries they knew would result from it. If it were, there could be no recovery except for malicious wrongs."

As already noticed it cannot be questioned, under the authorities, that defendant might and ought to have foreseen the danger to ordinary travel over a narrow bridge without guard rails. It is alleged, however, that the special facts take this out of the cases of ordinary and foreseeable travel. Do they ? It may at once be conceded, that if the traveling public always or generally drove only very gentle and easily managed horses, in daylight, at a slow gait, over very narrow bridges, such an accident as here happened would not have been the natural and probable consequence of the neglect to put up guard rails, for then the circumstances in this case would have been extraordinary. But no such limited use of a public highway would be made in any township in the state, and this the authorities well knew ; that it would be traveled night and day by those driving gentle and spirited animals, some that would take fright, others that would not, was known to them. If, with such knowledge, this accident might or ought to have been foreseen, and with reasonable care have been provided against, then was their negligence the proximate cause of the injury?

It is argued that defendant could not foresee the exceptional movement of a frightened horse; but this assumption does not determine whether negligence of defendant was the proximate cause, for a provision for safety did not depend on seeing so far. Of all our domestic animals, the horse is probably the most intelligent, yet among all of them he is most subject to fright; a bit of white paper stirred by the wind in the roadway will startle and sometimes render him uncontrollable; what movement he will make in one of his paroxysms of terror, human intelligence cannot anticipate, and still worse, because of his superior strength and agility, cannot control. Such facts are within the common observation of mankind. It is the habit of the horse, not his particular movement in the exercise of it, which last is beyond human foresight, that defendant ought to have known and provided against. The conclusion of appellee is founded on wrong premises, in substance these: The township authorities were not bound to make provision against that which they could not reasonably foresee; that a horse would back a buggy on and off a bridge which he had already crossed, could not reasonably have been foreseen; they did not foresee such exceptional conduct, and their neglect to provide against what no one could foresee, was not therefore the proximate cause of the injury; the unforeseeable backing of the horse was the proximate cause, and the absence of guard rails only rendered more serious the consequences. But from the established facts the premises from which to determine the application of the rule are not correctly stated in appellee's proposition. They should be stated thus: The township authorities were bound to foresee and reasonably provide against a common danger to ordinary travel on that highway; it is well known that one of such dangers arises from the habit of fright in the horse, and it is just as well known that when affrighted no one can foretell his conduct; the presence of guard rails would have been a protection from the danger of going over the bridge, no matter what the movement of the horse; therefore, the habit of the horse being known, they ought have put up the guard rails, and their neglect of duty in this particular was the proximate cause of the injury. Or to express it in another form: The fright of the horse was ordinary, and to be expected; that his conduct when in fright would be unreasoning, insane and

unlooked for, was also to be expected; if it were otherwise, it would have been extraordinary, because contrary to common observation; the township authorities should have guarded against that which was to be expected, and it will not excuse the negligence of the supervisors or make that negligence the remote cause, to assert, they could not foresee the particular freak of conduct in a terrified horse.

The cases cited and most relied on by the court below and appellee are Chartiers Twp. v. Phillips, 122 Pa. 601, and Herr v. The City of Lebanon, 149 Pa. 222. But neither is in conflict with Newlin v. Davis, supra, and its many kindred cases. As stated by our brother MITCHELL in Haverly v. R. R. Co., 135 Pa. 50, in speaking of the apparent conflict in the cases in the application of the rule in determining whether the negligence was the remote or proximate cause of the injury: "The different results which were reached in them, depended not on any different view of the law, but of the facts. . . . But whatever the result of the views taken of the facts in these cases, the principles of decision are the same in all."

In Chartiers Twp. v. Phillips, our brother GREEN in stating this court's view of the facts, on which view alone the judgment is founded, says: "It is beyond all question that the direct and immediate cause of the plaintiff's injury was the overturning of the wagon in which he was riding. It is equally certain that the wagon was upset by the sudden falling of the animal that was drawing it. What caused the mare to fall is not clear, and is not explained by the plaintiff's testimony. She did not take fright, was not running away, but on the contrary was moving very slowly through a mud puddle. She got entirely through, and then, to use the language of the plaintiff, ' the mare just fell over and fell with her head and neck right across the fence.' The fence gave way, and the plaintiff was precipitated down the bank by the side of the road, and was injured. Of course, the fence whether sufficient or insufficient to sustain the force of the fall, had nothing to do with producing the fall. The defendant alleged, and gave evidence to prove by the declarations of plaintiff to a number of witnesses, that the mare was harnessed with a collar too small for her, and that it choked her, and this choking was the real cause of her falling. If this was the true cause, it is difficult to under-

stand how defendant could be held responsible for the fall or its consequences."

The extraordinary and impossible to be foreseen circumstance of the choking which is not a habit, but which occasioned the fall, is put prominently forward as the controlling fact which determined the proximity of the cause. It is even strongly intimated that if the mare had plunged down the declivity from fright or while running away, an outbreak of the habit of the average horse, the conclusion would have been different. In determining whether a conclusion of law in any adjudicated case is a precedent in a subsequent one, the value of the first, usually, is measured by its similarity or dissimilarity to the second in its controlling facts. And even if the court, announcing the conclusion, misapprehends or mistakes the facts, the conclusion, to be of any value as a precedent, must be taken as applicable to the facts as assumed by the court; they, as concerns the judgment, are the facts, and whether existing or nonexisting either prompt or compel the conclusion of law that determines the judgment. For that reason, it would be a waste of time to notice the controversy here between counsel as to what were the facts in Chartiers Twp. v. Phillips ; for our purpose, and as a precedent in all cases after it was decided, the facts as stated in it by this court must be taken as correct.

On the facts as assumed in the opinion, notice the ruling: " The defendant in the fourth point asked the court to charge the jury that if the accident was caused by the uncontrolled struggle of a choking horse, or from this cause concurring with a defect in the highway, their verdict must be for defendant. To this, the court replied : 'Refused, unless the plaintiff by his negligence contributed to or was the cause of the uncontrollable struggle of the horse.' The vice of this answer is that the court confounded the effect of an independent cause of the accident with the effect of plaintiff's contributory negligence, and really held that it required a combination of the two in order to relieve the defendant from the responsibility for the accident. Now the contributory negligence of plaintiff alone and by itself, if it existed, was sufficient to discharge the defendant from all liability. So, also, if the accident was produced by an intervening and independent cause, for which defendant was not responsible, that too would relieve defendant

from liability. The point should have been affirmed as it stood." So on the facts, as viewed by this court, there was error in this particular.

Then again to quote from the opinion discussing the third assignment of error : " Although the choking of the mare resulting from a too tight collar, was the immediate cause of the accident, it is practically held to be no defense, unless plaintiff had knowledge of it, or ought to have known it. . . . Whether he had or had not knowledge of the smallness of the collar, and that it was choking the horse, the effect of the choking as productive of the accident would be precisely the same and hence if, as an independent producing cause of the accident, it would suffice to relieve the defendant from responsibility, it would accomplish that result without any reference to the plaintiff's knowledge." So, on the two assignments of error noticed, the judgment was reversed. The facts bore but little semblance to those in this case. Herr v. City of Lebanon, supra, opinion by our brother WILLIAMS, the second case cited and relied on by appellee, approaches in similarity of facts Chartiers Twp. v. Phillips.

The roadway was wide, and in excellent condition ; there was a descent on the lower side of the street, and no guard rail, the horse drawing the vehicle, whether from sickness or because the vehicle was too heavily loaded, choked and fell ; struggled to regain his feet; in its struggles, the driver could not control it ; each time it got partly up it fell again, and each time nearer the edge of the bank, until it went over, and it went over, not in the ordinary use of the street, but because of its inability to manage its load. The point of the reasoning in vindication of the judgment is that, in view of the peculiar facts, the defendant was not answerable for the damage resulting proximately from the struggles of a choking, overladen horse, and while the absence of a barrier, probably rendered the injury more serious, it was in no sense the cause of it. The decision in the same case holds with and cites Hey v. City of Phila., supra, that: " It is the duty of road officers to provide roads suitable for ordinary travel conducted in the ordinary manner, and to provide such safeguards as may be needed to meet the risks of such travel."

The cause in each of these cases, whether produced by the

fault of the driver or not, was out of the ordinary, was so rare as to be extraordinary, and on that, as a controlling fact, the application of the rule is based; it was as improbable of foresight as if a vicious person had suddenly and maliciously seized the horse by the head and pulled him over.   As to the other cases cited by appellee,—in Worrilow v. Township, 149 Pa. 40, as a fact, there was no negligence on part of the defendant.   In Shaffer v. Township, 150 Pa. 145, and Kieffer v. Borough, 151 Pa. 304, both were decided on the ground that the particular causes of the accidents were out of the ordinary, and such as could not have been foreseen and guarded against.

We do not see, however, in any reasonable view of the particular circumstances which immediately preceded this accident, that they were the efficient cause of it, and that the negligence of defendant only made the injury more serious.   The plaintiff, when injured, was in the ordinary, lawful use of the highway; while so using it, she dropped her hat, as the horse stepped on the bridge; Watson, exercising care, did not stop on the dangerous structure, but fourteen feet beyond, and then returned to pick up the hat; then the horse took fright, backed but a few steps on and off the bridge; this was but incident to the ordinary use of the highway; it was not maintained for horses only that never took fright; the ordinary horse might take fright as he approached the bridge, run on and plunge off it; he might frighten at the fluttering birds in the briers on the rocks or at the noise of the waterfall, as alleged here, for these objects were continually present at that place, and consequently, after he had crossed the bridge, might back on and off it.

Speculating on the doctrine of proximate and remote cause in supposed or hypothetical cases, seems to have been a sort of intellectual recreation with text writers on the subject, since the squib case in 2 Wm. Black, R. 893; with many, the rule laid down in Hoag v. R. R. Co., supra, would be criticised as lacking in scientific precision; but approximate certainty in the administration of justice, on evidence in an issue, is .all we can hope to attain to.   The same rule was, in substance, though in somewhat different language, adopted in many cases before Hoag v. R. R. Co.   In terse language, without leaving room for theorizing where the evidence is conflicting, and no fault is attributable to the plaintiff, it brings the jury at once to the ascertain-

ment of the controlling fact: Was the consequence such as un-der the circumstances might and ought to have been foreseen and provided against? It eliminates all speculation as to the cause of the cause, which often is merely interesting, and aids not in determining just responsibility. As is said by STRONG, J., in Insurance Co. v. Boon, 95 U. S. 130, the proximate cause is the dominant controlling one, and not those which are mere inci-dents. The dominant cause here was a bridge negligently dangerous to the ordinary horse at all times, when he displayed one of his common characteristics. True, his fright was an in-cident without which the dominating cause could not have operated to produce the injury; but the same may be said of most of the incidents connected with the trip on the highway that evening. If plaintiff had not dropped her hat, if Watson had not stopped to get it, and so running back to the originat-ing cause going to the "sociable" behind a horse instead of on foot; all were in a certain sense causes of the injury, without which the accident would not have happened, but occurring in the ordinary, lawful use of the highway, the law regards them as but incidents, and still holds the neglect of duty as the dom-inating or proximate cause.

The judgment is reversed, and a v. f. d. n. is awarded.