# Nicholas *v.* Keeling, Appellant.

*Negligence—Contractor—Obstruction of highway—Fright of horse.*

While contractors for the repairs of a highway, or their employees, during the intervals between labor, have the right to leave alongside the highway the carts in daily use, they are nevertheless bound to use the care of an ordinarily prudent man having regard to the circumstances in doing it.

In an action against a contractor engaged in repairing a public road to recover damages for personal injuries sustained by the fright of a horse, the case is for the jury where the evidence for the plaintiff is sufficient to warrant a jury in finding that carts were left standing with their shafts upright by the contractors, or their employees, with their implied permission, partly in the traveled way, that there was barely room to pass them in safety in the daytime and under the most favorable circumstances, that they could not be seen at night by an approaching driver until he was almost upon them, that they were so placed as to be likely to frighten an ordinarily quiet and well trained horse coming suddenly upon them, and that if he shied he would be likely to plunge over an unguarded and precipitous embankment at the other side of the road, and where there is no evidence that it was impracticable to place them in a position where they would be less likely to cause accident.

*Negligence—Master and servant—Negligence after hours of employment.*

In an action against a contractor employed in repairing a public road to recover damages for personal injuries sustained by reason of the fright of the plaintiff's horse at a cart left standing in the road during the night, the defendant is not liable for the injury where the evidence will warrant the jury in finding that the cart was left standing in the road by an employee, to whom it belonged, at a point about a mile distant from the work, that the employee was hired for no definite time, and that his duties to his employers began when he reached the designated place for work in the morning, and ended at the close of the day.

Argued April 15, 1902.    Appeal, No. 36, April T., 1902, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., April T., 1902, on verdict for plaintiff, in case of L. W. Nicholas v. Joseph Keeling and Patrick Ridge, trading as Keeling v. Ridge, and the County of Allegheny.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Trespass to recover damages for personal injuries.    Before McCLUNG, J.

The facts appear by the opinion of the Superior Court.

The defandants presented the following points :

. 2. If the jury believes from the evidence that the carts were the property of Mark Ridge, and that he was employed from 7 in the morning until 5.30 in the evening, under contract to furnish carts, horses and men at a fixed rate per hour, and that he took care of his own stock and his own carts and that the accident occurred at 7.30 in the evening at which time the owner of the carts was not engaged in any work for the defendants, in that case the defendant, Keeling & Ridge, are not responsible nor liable for any acts of negligence committed by the owner of the carts, and the verdict in this must be for the defendant, Keeling & Ridge. *Answer :* Refused. [1]

3. If the jury believe from the evidence that the defendants had notified Mark Ridge and others in their employ not to leave obstructions upon the highway, and that after working hours upon February 16, 1900, the said Mark Ridge while on his way home from work, because of an accident to his horse, was obliged to leave the cart upon the roadside, and that Keeling & Ridge had no notice of it, the verdict must be for the defendant, Keeling & Ridge. *Answer :* Refused. [2]

4. If the jury believe from the evidence that this road was in process of construction and that the carts were useful in the construction of said road, and were so used, and that they were so placed as to furnish sufficient room for passenger travel along said highway under ordinary circumstances, the fact of the leaving of said cart on the roadside, as testified to, was not negligence, and the verdict must be for the defendant, Keeling & Ridge. *Answer :* Refused. [3]

5. Under all the evidence in this case, the verdict must be for the defendant, Keeling & Ridge. *Answer :* Refused. [4]

Verdict and judgment for plaintiff for $225. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*H. L. Castle,* with him *Stone & Stone,* for appellant, cited : Keiffer v. Hummelstown Borough, 151 Pa. 304; Keeley v. Shanley, 140 Pa. 213.

*R. A. Kennedy,* of *Kennedy & Smith,* for appellees.

OPINION BY RICE, P. J., October 13, 1902:

The firm of Keeling & Ridge, the appellants, entered into a contract with the county of Allegheny to macadamize and otherwise improve a certain highway known as the Freeport road, and were engaged in the performance of the work at the time of the happening of the accident out of which this action arose. The contract contained the following clause : " During the performance of the work the contractor shall place proper guards upon and around the same, for the prevention of accident, and at night, during said period, shall put and keep suitable and sufficient lights as warning signals. He shall so carry on the work that there shall be no undue interference with or hindrance of travel over the road." The plaintiff alleged that about half past seven o'clock on the evening of February 16, 1900, he was driving in a buggy with a single horse along the road; that his horse, although ordinarily quiet and not easily scared, took fright at a couple of carts " dumped up " on the upper side of the road and partly in the road, " the horse frightened suddenly at them, jumped sideways and we went over the hill ; " that the space between the carts and the edge of the steep and unguarded embankment twenty feet high, over which the horse plunged, was about twelve feet ; that there were no lights or other warning ; and that owing to the darkness and a bend in the road he did not see the carts until he was nearly opposite them. Being asked to describe their appearance he said : " They made a very ugly appearance, they would scare anybody, even a man walking along coming on them." Another witness who passed there the same evening testified that he was compelled to lead his horse by the carts, that " they would scare most any horse that had any life in him, and there was a little skift of snow that night on them." Miss Klingensmith, who was riding with the plaintiff, testified, that " the horse frightened at these two carts that were standing there, the shafts of the carts were standing straight up, and before we knew it we were down over the hill, we didn't have time to jump out or get ready to jump, it happened so quickly." There was a conflict of testimony as to some of these allegations, especially as to the width of the road, the height of the embankment and the position of the cart or carts ; it being alleged by the defendants that the part of the road which was

free from any obstruction, and could be driven, was thirty-six feet wide at that point, and that there was but one cart, which was left standing off the traveled way in the gutter and behind a slip that had come down from the embankment on the upper side of the road.    These were all questions for the jury ; and in determining whether the defendants were entitled to binding instructions, as well as whether they were entitled to an affirmance of their second and fourth points, we must look at the case from the standpoint of the plaintiff's evidence relative to these disputed questions of fact.    While the use of carts in the prosecution of the work was necessary, yet as the road was not closed, but was left open for public travel, it cannot be declared as matter of law that the defendants owed no duty whatever to the public with respect to the disposition of the carts when they were not in use.    They had control of the place where their employees were at work on the day of the accident, and were responsible for the condition in which it was left at the close of the day.    If their employees left their carts standing where the close of the day's work found them, and in the position described by the plaintiff and his witnesses, it is to be presumed that it was with the defendants' knowledge and permission.    In the view of the case presented by such a state of facts it makes no difference whether the carts belonged to the defendants or their employees.    An owner of land abutting on the public highway has a right to use a portion of the highway in a reasonable manner, for special purposes, for a temporary period ; that right is not subservient to the right of the traveling public, and its exercise, without negligence, imposes no liability : North Manheim Township v. Arnold, 119 Pa. 380.    In Piollet v. Simmers, 106 Pa. 95, it was said that " the correct rule is, that a property owner who has a lawful right to expose an object, on or along a public highway, within view of passing horses, for a temporary purpose, is bound only to take care that it shall not be calculated to frighten ordinarily gentle and well trained horses."    The right of a contractor engaged in repairing or improving a highway is of equal, if not higher, grade to that of a property owner.    The right of the public to the use of the highway is subordinate to the right of the public authorities to make reasonable repairs for the public benefit.    Hence in a case where it appeared that a

steam roller, lawfully in use in the construction of a macadamized roadway of the width of eighteen feet in the middle of a highway sixty-six feet wide was left standing over Sunday on the edge of the already macadamized part of the road, leaving a clear space of about thirty feet, the steam roller being covered with canvas tied at the sides or corners, it was held as matter of law that the defendants, the contractors, were not liable for an accident occurring in the daytime through the fright of a horse at the sight of the machine : Keeley v. Shanley, 140 Pa. 213. This case is relied on by the defendant's counsel as sustaining the fourth and fifth assignments of error. We cannot so regard it. There the accident occurred in broad daylight, the machine could be seen and was seen by the driver when distant therefrom, 200 yards ; there was a space of thirty feet in which to pass, and according to the statement of facts upon which the decision was based, the defendants had done all that was practicable to avoid accident to others. Chief Justice PAXSON said : " The place where it was left appears to have been the safest one where it could have been placed when not in use. It could not be run off on the soft earth by reason of its great weight, and to have constructed platforms or lateral turnpikes on which to have run it off from the road would have been impracticable." The decision to be of any value as a precedent must be taken as applicable to the facts thus assumed by the court ; as was said by Mr. Justice DEAN, " they, as concerns the judgment, are the facts, and whether existing or nonexisting either prompt or compel the conclusion of law that determines the judgment: " Yoders v. Amwell Township, 172 Pa. 447, 457. To extend the ruling in Keeley v. Shanley to a case where there was evidence sufficient to warrant a jury in finding that the objects were left by the contractors, or their employees with their implied permission, partly in the traveled way, that there was barely room to pass them in safety in the daytime and under the most favorable circumstances, that they could not be seen at night by an approaching driver until he was almost upon them, that they were so placed as to be likely to frighten an ordinarily quiet and well trained horse coming suddenly upon them, and that if he shied he would be likely to plunge over an unguarded and precipitous embankment at the other side of the road, and where there

was no evidence that it was impracticable to place them in a
position where they would be less likely to cause accident,.
would be as unwarranted as to refuse to accept the decision as
authority in a case where the controlling facts were the same.
Granting the right of the contractor, or their employees, dur-
ing the intervals between labor, to leave alongside the high-
way the carts in daily use, they were nevertheless bound to
use the care of an ordinarily prudent man, having regard to
the circumstances, in doing it; and whether they used such care
was, under the evidence adduced by the plaintiff, a question
for the jury. The court correctly charged them that the mere
fact of leaving room enough to pass was not conclusive against
the plaintiff's right to recover. "It is the question of placing
carts in such way as that they would be likely to frighten a
horse whilst there is a bank at the other side of the road, not
so near but that you could drive by, but so near that a fright-
ened horse is likely to go over."

We have thus far considered the case from the standpoint
of the plaintiff's evidence. The evidence introduced by the de-
fendants raised an entirely different question. They claimed
that the improvement of the road at the point in question was
completed, except the removal of a slip that had come down
from the sidehill, and that on the day in question they had
been working at a point about a mile distant. Among their
employees was one Mark Ridge who was engaged to furnish
four carts, four horses and a driver, besides himself, to go along
the line of the road and remove slips and cart the dirt over to
the other side of the road. His duties were to report at the
designated place at seven o'clock in the morning and work un-
til about five or half past five o'clock in the evening. He was
paid by the hour for that period of time. He testified, that
on the day in question he was at work at a point about a mile
distant, and that at the close of the day he started with his
carts and horses for Springdale where he kept them at night.
He says that when he reached the point in question, one of
his horses having become lame, he backed the cart in behind a
slip there and left it. He testified that but one cart was left,
not two as claimed by the plaintiff. Assuming that this was
the cart which frightened the plaintiff's horse, and that Mark
Ridge was negligent in leaving it at that point in the manner

in which it was left, can the defendants be held liable for the consequences of this act in the absence of evidence of knowledge on their part of the unsafe condition in which the highway was thus placed?

As already intimated, if he had left his cart where the close of the working day found him, it might well be held that his employers would be responsible ; for, in that case, they would be chargeable with notice of the unsafe condition in which the highway was thus put.  The defendants' second point was properly refused, because it was so worded that an affirmance of it would imply that the defendants would not be responsible even in such a case.  So also, for present purposes, it may be conceded, although this is not so clear, that the defendants would be responsible, if it was part of the duty of Mark Ridge's employment to take the carts to a particular place provided or designated by the defendants after the close of the day's work, and while in the performance of this duty he had negligently left them at the place of the accident.  But neither of these facts is in the case, if the defendants' testimony is to be believed.  Ridge's duties to his employers began when he reached the designated place for work in the morning, and ended at the close of the day.  He was hired for no definite time.  The relation of master and servant ended with the day's work.  So far as his duty to his employers was concerned, he was then at liberty to go where he pleased.  The defendants had no control over his actions after he left the particular place where he was employed on that day.  The testimony of the two defendants and of Mark Ridge is clear and unequivocal upon that point. Nor can it be said that they were affected with notice of what he did a mile from that place, unless it be held that it was their duty to keep watch of him until he reached his stables or to patrol every rod of the road at night, which would be unreasonable.  If the defendants' testimony is to be believed, he had the same right to use the road in going to and from his work that any other member of the general public had, and was solely responsible to third persons for his negligent acts in so doing, unless they were known or ought to have been known to the defendants in time to prevent the accident.  We think, therefore, that the court erred in refusing their third point, and especially in that portion of the answer thereto in which the

learned judge said : " But the testimony here is that while in one sense it was outside of working hours, it was while Ridge was disposing of his carts for the night, and that was part of his work, under the testimony in the case." The first, third and fourth assignments are overruled and the second is sustained.

Judgment reversed and venire facias de novo awarded.