CHARLES BAKER ET AL. v. PENNSYLVANIA CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 27, 1891—Decided May 25, 1891.

[To be reported.]

1. An instruction, in an action for personal injuries, that if the injury was the remote cause of the injured person's last sickness and death, a recovery might be had for the pain suffered in that sickness, is not error, where it appears from the context that "remote" was not used in its legal sense, and that the jury could not have been misled by it.

(a) The court charged: "It is of course difficult to give a money value to pain and suffering.    No person would voluntarily endure such pain and suffering as it is proven Mrs. Baker endured, for any amount of money.    But it is the duty of the jury, if they find for the plaintiff, to fix some sum which would be a compensation for this pain and suffering:"

2. The instruction was error; its effect was to suggest the price in money sufficient to induce a person to undergo voluntarily the pain and suffer-

Statement of Facts.

ing complained of, as a measure of the compensation for having been subjected to it. Such a standard is inapplicable in actions for a personal injury, not wantonly inflicted.

3. The true rule is, that, in addition to loss of time and expenses actually incurred, the jury may consider also the nature of the injury, and the pain and inconvenience resulting from it, and make such allowance therefor as, in view of all the attending circumstances, may seem to be just and reasonable : Per Mr. Justice WILLIAMS.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 134 July Term 1890, Sup. Ct.; court below, No. 191 May Term 1885, C. P.

On April 23, 1885, Charles Baker and Phœbe Baker, his wife, in right of said Phœbe Baker, brought trespass on the case against the Pennsylvania Company, to recover for personal injuries alleged to have been received by said Phœbe Baker, in consequence of negligence of the defendant company. The defendant pleaded not guilty. Before the trial, the beneficial plaintiff having died, D. G. Spaulding, administrator of her estate was substituted.

At the trial, on March 6, 1890, the following facts were shown :

On the morning of February 24, 1885, Mrs. Baker was a passenger in a train of the defendant, running from Albion to Erie, on the Erie & Pittsburgh railroad, operated by the defendant company. After proceeding a distance of between one and two miles beyond Albion, a part of the train was derailed, and Mrs. Baker received injuries in the wreck. Her physician testified that, upon making an examination of her on the day of the accident, he discovered various contusions and fractures of various bones, and, in his opinion there was an injury to the spinal cord affecting the nervous system. The results of these injuries are stated in the charge of the court below, infra.

The immediate cause of the accident was the breaking of a rail. Testimony for the plaintiff tended to show that the track was out of order and defective, for want of repairs, and that the breaking of the rail was due to such defective condition. Testimony for the defendant tended to show that on the morning of the accident the weather was extremely cold and frosty and that it was the frost that caused the rail to break, the track being in a good condition.

Charge of Court below.

The testimony being closed the court, GUNNISON, P. J., charged the jury in part as follows:

It is the duty of the railroad company to provide safe machinery, it is their duty to provide a safe roadbed, and it is their duty to maintain both the machinery and roadbed in a safe condition. Not to do this is to be guilty of negligence, and the railroad company is liable for the damages that ensue in consequence of such negligence. The railroad company is not an insurer of the safety of the passenger. They do not guarantee that a passenger who gets on the train at Erie shall arrive at his destination in New York, for instance, safely; they do not guarantee any such safety as that. They are bound to use reasonable care in transporting him; to use safe means in transporting him, and do everything that is reasonably within their power to see that he does reach his destination in safety. If, through means of any unforeseen accident, he is injured or killed, they are not liable. If the injury is occasioned by some accident that they could not foresee, and which reasonable human foresight could not have provided against, then it is an accident that they are not responsible for, and the injury is one for which the passenger cannot recover in damages.

[There is one principle, however, which has not been argued at length by either counsel for the plaintiff or the defendant, which is proper to state to you; and that is that where an accident occurs and an injury ensues, in the case of a passenger the law presumes that the accident occurred through the negligence of the railroad company.] [1] That is the presumption. It is not a conclusive presumption which cannot be rebutted, but, in the absence of any testimony, it is the presumption of law that the accident resulted from the negligence of the railroad company, and it then becomes the duty of the railroad company to satisfy you that that is not so. And in the absence of any evidence on their part to show that they were not negligent, you would be justified in presuming that they were, and they must show upon their part that they were not guilty of negligence, in order to rebut this presumption.

Those are the legal principles that you will be called upon to apply in the determination of the main question in this case. The main question of fact in this case is, what was the cause

Charge of Court below.

of this accident? . . . . . If, as I say, you find that the accident resulted from a cause over which the company had no control, your verdict will be for the defendant. But, if you find the accident was caused by the negligence of the railroad company, it will be your duty to assess the amount of damages that shall be recovered. You will have to name in your verdict the amount that the railroad company shall pay to the plaintiff.

The old lady, Mrs. Baker, who was injured, was a married woman. Her husband was living. He was responsible for the medical attendance and the expense thereof, and he was entitled to whatever earnings she was capable of acquiring. Her earnings under the law, as it stood at that time, belonged to the husband, and he was responsible for the cost of her maintenance and medical attendance. For that reason, in this suit you cannot take into consideration, in assessing damages, any expense that may have been incurred in attending her. . . . . The only element that goes in to constitute the damages in this case is the pain and suffering that she has endured. . . . .

Now, it is shown that after the injury Mrs. Baker was unable to do the work she had formerly done. That there was a weakness in her arm that the doctor tells you resulted, in his opinion, from this injury to the spinal cord, the nerves from the spinal cord branching out about that place, about that point, and supplying the arms, the nervous force and nervous sensation and power of the arms, and that that was caused by the injury to that point, he thinks. Now, I do not mention this for the purpose of giving you an opportunity to take into consideration the loss of strength or loss of power to labor, for the purpose of estimating that in your damages, but merely to call to your attention the claim of the plaintiff that she suffered from this injury to her neck; suffered in the loss of strength to her arm; [and of course a loss of strength or partial paralysis is a subject of pain and is perhaps attended with pain as much as anything else.] [2]

Now, about the seventh of April she was taken to her home. She had to be assisted to her sleigh at her daughter's house at Albion, and was assisted on board the cars at Erie when she was transferred to the train on the Philadelphia & Erie railroad. After that time, it appears that she recovered, to a

certain extent at least; whether fully recovered from the consequences of that injury it is for you to determine. [And whether the subsequent sickness, and sickness which caused her death were caused by this injury, is for you to determine. ]³ At any rate, it appears that she did to a great extent recover; that she was about her house and did her housework. . . . .

Now, did the injury result in her death? You can give no damages by reason of death. This suit is not for damages for death, because it was brought by her herself before she died, and she of course could not bring a suit for damages for her own death. There is no claim here on account of her death. But, in estimating pain and suffering you must consider the amount of pain that she endured up to the time that she died, and therefore it becomes important to ascertain whether or not the last sickness was caused by this accident. The only medical authority who testifies in regard to that is Dr. Blodgett, and he tells you that after receiving an account from her and her daughter of the injury in April, when he was called to attend her, and having noticed her condition at the time and carefully taken a memorandum of it so that he could refer to it afterwards, and afterwards being called at the time of her death in 1886, and noticing her condition at that time, he is of the opinion that the remote cause, not the immediate but the remote cause of the death, was this accident. [And if the remote cause of the death was the accident, of course it must have been the remote cause of her last sickness and the pain which she experienced in her last sickness, and if so she would be entitled to recover for that, providing your verdict was in her favor.]⁴ On the other hand, the doctor tells you that the immediate cause of death was the wasting away or loss of strength, but that that loss of strength was caused by the injury she sustained from the accident, so that that injury would be the remote cause of her last sickness.

On the other hand, you have the testimony of several witnesses who have not been impeached in any way, who tell you that the old lady told them,—one of them says, that before she sustained this injury she complained of having been subject to heart disease; that afterwards when she was sick in her last illness she said she felt her old trouble coming on, the heart

disease. And that she said at some time previous to this, to one of the witnesses, that she had had heart disease for forty years. Now, if this last sickness was caused by heart disease, the pain and sickness that she experienced at that time would form no element whatever in making up the damages that she should be awarded. It would be only the damages which resulted from the accident for which the railroad company would be liable, and not for any other pain or suffering that she experienced. It is of course difficult to give a money value to pain and suffering. [No person would voluntarily endure such pain and suffering as it is proven Mrs. Baker endured, for any amount of money.] [5] But it is the duty of the jury if they find for the plaintiff, to fix some sum which would be a compensation for this pain and suffering. . . . .

—The jury returned a verdict for the plaintiff for $3,500. A rule for a new trial having been discharged, judgment was entered on the verdict; whereupon the defendant took this appeal, assigning for error:

1–5. The parts of the charge embraced in [ ] [1 to 5]

*Mr. J. Ross Thompson,* for the appellant:

The effect of the instruction quoted in the first assignment of error would be to create an impression unfavorable to the defendant. It was not the duty of defendant's counsel to call the attention of the jury to the presumption mentioned by the court. And the instruction that "loss of strength, or partial paralysis, is a subject of pain," was an assumption unwarranted by the testimony. It is well known that little or no pain is caused by paralysis. The instruction covered by the third assignment was misleading, as the cause of action was not the death of Mrs. Baker, but pain suffered by her. Under the fourth assignment, it is hardly necessary to quote authorities to show that there can be no recovery for pain experienced in the last sickness, if the accident was only the remote cause thereof. There was a conflict of testimony as to the pain which it was claimed Mrs. Baker suffered, and in saying that "no person would voluntarily endure such pain and suffering as it is proven Mrs. Baker endured," the judge was invading the province of the jury.

Opinion of the Court.

*Mr. S. A. Davenport,* for the appellee.

Considered in their connection, the passages of the charge complained of are free from error. The only just and fair manner of reading the charge, is to read the whole of it together.

OPINION, MR. JUSTICE WILLIAMS:

The first, second, and third assignments of error are hardly just to the learned judge of the court below. They rest on detached sentences taken from the charge, which need to be read in their proper connection, and which, when so read, are unobjectionable. The fourth assignment is directed to what is evidently an inaccurate expression which may seem to lay down the doctrine that remote as well as proximate causes are sufficient to sustain an action; but the context shows that this was not the meaning of the judge, and that the jury could not have been misled by the use of the word " remote " in the paragraph complained of. What was said was this: " The doctor tells you that the immediate cause of death was the wasting away or loss of strength, but that the loss of strength was caused by the injury." He then added, " so that the injury would be the remote cause of her last sickness," for the pain experienced in which he had already said " she would be entitled to recover providing your verdict was in her favor." But upon the testimony of the doctor it is clear that the injury was not the remote, but the proximate cause of her last sickness, for he says that the loss of strength and wasting away of which she died " were caused by the injury." There was therefore no disregard of the maxim " causa proxima, non remota, spectatur," recognized and applied in Penna. R. Co. v. Hope, 80 Pa. 373; Lehigh V. R. Co. v. McKeen, 90 Pa. 122, and several other cases. It was simply a mistake to use the word " remote," in describing the relation between the injury and the sickness which the doctor described as the result of the injury.

The fifth assignment is of a more serious character. The learned judge, while speaking of the measure of damages, told the jury that the plaintiff's cause of action rested mainly on the inconvenience and pain suffered by her in consequence of the injury she received; and, to guide them in deciding what compensation to make for suffering, he used this language: " It is

Opinion of the Court.

of course difficult to give a money value to pain and suffering. No person would voluntarily endure such pain and suffering as it is proven Mrs. Baker endured, for any amount of money. But it is the duty of the jury, if they find for the plaintiff, to fix some sum which would be a compensation for this pain and suffering." The effect of this was to suggest the price in money sufficient to induce a person to undergo voluntarily the pain and suffering for which a recovery was sought in the action, as a measure of the compensation due the plaintiff for having been subjected to it.

The learned judge first spoke of the difficulty in the way of fixing a money value upon suffering. He followed this by the statement that no amount of money would be regarded as sufficient to induce a person to undergo the pain complained of in this case, which suggested a possible standard of value that might be applied. He then finished the presentation of the subject by telling the jury that if they found for the plaintiff it was their duty " to fix some sum which would be a compensation for this pain and suffering." The idea of a price, as the measure of the plaintiff's compensation, is not applicable to this class of cases. In actions upon contracts, it often happens that the price of the article or of the services sued for is a proper measure of the plaintiff's damages for the failure to deliver the article or to render the services. So, in actions founded on tort, the cost of repairing or replacing the property injured or destroyed may show to what sum the plaintiff is entitled. Such a standard cannot be applied in actions for a personal injury, not wantonly inflicted.

There is no market in which the price of a voluntary subjection of one's self to pain and suffering can be fixed. There is no market standard of value to be applied; and to suggest the idea of price to be paid to a volunteer as an approximation to the money value of suffering, is to give loose rein to sympathy and caprice. The true rule is that, in addition to loss of time and expenses actually incurred by the plaintiff by reason of the injury, the jury may consider also the nature of the injury, the pain and inconvenience resulting from it, and make such allowance therefor as, in view of all the attending circumstances, may seem to be just and reasonable. The age, the health, habits, and pursuits of the plaintiff must be taken into consid-

eration in determining what is a reasonable allowance for inconvenience and suffering in any given case. The absence of a cruel or wanton purpose in the defendant must not be overlooked. From the whole case, the question is, what is a reasonable allowance for the suffering necessarily endured? This question is for the jury, subject, nevertheless, to the supervisory control of the court, whose duty it is to set aside a verdict that is unreasonable and excessive.

In all other respects, this case seems to have been well tried, and we greatly regret the necessity for sending it back. There seems, however, no escape from the conclusion that the fifth assignment presents substantial error which requires correction.

The judgment is reversed, and a venire facias de novo awarded.

