## J. W. Closser *v.* The Township of Washington, Appellant.

*Proximate cause—Township road—Guard rail—Question for jury.*

The roadway was about ten feet wide and on a dark night a horse taking fright backed over an unguarded abrupt embankment and fell, breaking his master's leg. A stream ran at the bottom of the embankment and it was alleged the horse was frightened by a splash in its water. *Held,* that the question was for the jury whether the narrowness of the way and the absence of guard rails was the proximate cause of the accident.

*Measure of damages—Harmless error—Covered by charge not cause for reversal.*

Where the trial judge in his charge properly lays down the proper rule as to the measure of damages as to pain and suffering resulting from an injury, the appellate court will not reverse for failure to exclude certain evidence of the plaintiff which in itself was incompetent and irrelevant when it is apparent from the verdict that under the adequate instructions of the court the defendant, appellant, took no harm.

*Evidence—Opinion testimony as to safety of road.*

Plans and photographs being in evidence, opinion testimony, as to whether or not the road was safe, was properly excluded.

Argued April 17, 1899. Appeal, No. 20, April T., 1899, by defendant, from judgment of C. P. Greene Co., April T., 1897, No. 168, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J. ORLADY, J., dissents.

112, (1899).]                    Statement of Facts.

Trespass.   Before CRAWFORD, P. J.

It appears from the evidence that plaintiff and another man named Huffman were riding along the township road at night. Plaintiff was riding a somewhat spirited young mare and there was some evidence tending to show that she had a habit of scaring easily.   He was holding the reins of the bridle in his left hand, his right being in his pocket.   While so riding a noise which the riders thought was a muskrat jumping into the stream with a splash, scared the mare of the plaintiff, causing her to jump back behind Huffman's horse.   There was evidence tending to show that the mare, then lunging forward, plaintiff struck her with a whip or strap and began abusing her.   The mare made several leaps forward going about forty feet and then went over the lower side of the road falling upon the plaintiff's leg and fracturing the same.   There was evidence tending to show that at the point of the accident the road was straight and smooth, about ten to twelve feet wide where the mare first took fright, and upwards of ten feet where the accident occurred. It was also in evidence that plaintiff was familiar with the road, having taken a three years' contract, in force at the time of the accident, to keep this road in repair; that at the place where the accident occurred the road was what is known as a side cut road—cut into quite a steep hill on the east side, and the run or stream flowed in toward the road on the lower side.   In order to protect the road from being washed away by the stream, a rough stone wall had been laid up extending for a distance of about forty feet along the lower side of the road between the road and the run.   The mare scared at or near the south end of that wall and did not go over the bank until she had entirely passed the north end of said wall.   Surveys and photographs of the road were put in evidence by both parties.   [At the trial defendant offered to show, John Huffman being on the stand, with a view of following the evidence with that of other witnesses familiar with the road, that the road where the accident occurred was not a dangerous place and that it was not necessary to erect a barrier along the same.   Objection was made and sustained to this offer by the court and bill sealed.]   [2, 3]

J. W. Closser, the plaintiff, being on the stand, counsel proposed to ask the witness the following question, which was allowed under objection:

[" Q. I ask the witness to state what damage he has suffered, in his opinion, as the result of this accident, taking into consideration the doctors' bills he has paid and the pain he has suffered up to the present time and from the care that had to be taken of him, the loss to his business and all the damages suffered by him as the result of the accident."] [1]

The plaintiff submitted the following points :

[1. If the jury believe from the evidence in the case that J. W. Closser on the night of November 3, 1896, in riding on the public road on horseback, in Washington township, at the place described by the witnesses, and that his horse became frightened and plunged over the embankment at the side of the road, falling upon the person of the plaintiff, thereby breaking his right leg and fracturing his ankle ; and if they further find from the evidence that the road at the place of the accident was dangerous by reason of the steepness and height of the embankment, the same being without barriers or guard rails, and being within and upon the public highway ; and that the said accident occurred without any negligence on the part of the said Closser, then their verdict should be for the plaintiff for such damages as the jury may find from the whole of the evidence in the case. *Answer :* That point is correct and is affirmed.] [4]

[2. In view of the fact that the ordinary horse will, at times, scare and take fright, and that his movements when frightened are wholly unreasonable and unforeseeable, it is for the jury to determine what provision shall reasonably be made by the township for the safety of travelers upon the public highway, and it being the duty of the township to provide a reasonably safe highway for ordinary travel by the ordinary horse, then, if the jury should believe from the evidence that the proximate and direct cause of the plaintiff's injury was the neglect of the township to put up barriers at the place where his horse went over the embankment, then their verdict should be for the plaintiff for such damages as he is entitled to under the evidence. *Answer :* That position is correct and is affirmed. If the facts support the point it is correct.] [5]

[6. If the jury believe from the evidence that the plaintiff knew of the condition of the road when he undertook to ride over it, and was very familiar with it, his riding over it at the

time of the accident is not such contributory negligence as to prevent his recovery, when there was no other way for him to take. *Answer :* That point, I think is correct, the mere fact of his riding over it would not amount to contributory negligence. You would have to determine that fact from what he did in riding over it and from all the facts appearing in the evidence as to his action and conduct there at the time. The mere fact the road may be dangerous, does not of itself make a man guilty of contributory negligence in passing along it; he may have no other way to pass. That is a question for the jury to determine.] [6]

Defendant submitted among others the following point, which was refused by the court:

[1. The plaintiff himself having testified that his mare became frightened at a noise made by some animal in the run near the side of the road and thereby becoming unmanageable went off the road and fell upon the plaintiff, caused the injuries of which he complains. Under this state of facts the injuries of the plaintiff were produced by an intervening and independent cause for which the defendant was not responsible and the plaintiff cannot recover. *Answer :* Now that point is refused, because it requires the court to say here that the fright of the horse was occasioned by an independent and intervening cause. That we will not say to you, gentlemen of the jury, as a matter of law. That is a question we submit for your determination, leaving the question with you with such instructions as the Supreme Court has given, saying the fright of a horse under ordinary circumstances is to be expected as an ordinary circumstance. Now you can determine that question yourselves.] [7]

The court charged the jury, inter alia, as follows :

[It is a doctrine of law that where an injury or accident of this kind occurs, to make the parties charged liable, it must have been the result of negligence on the part of the party charged. If there was contributory negligence on the part of the party claiming damages, the township would be relieved, that is if the facts set out show that to be the true theory of the matter. In determining the question of negligence you are to take into consideration the road as described by the

different witnesses, the width, the height of the embankments, the grade and all the circumstances that have been testified to here as to the time, manner and place of this accident, and from those circumstances, you are to make up your judgment in this case.] [11] . . . .

[In coming to the question here as to what was the proximate cause of the accident, you are to keep in mind these facts : that in order to make the township liable, their negligence must be the proximate cause of the accident. The courts have said that the proximate cause is the immediate or direct cause without other agency intervening that leads to the production of the result, and if there was an intervening independent cause here for which the township was not responsible or could not foresee, or would not be obliged to expect, the township would be relieved. That will be the question for you to decide here, whether there was such a cause or not. It is contended here that the fright of this horse was produced by the splash of some animal jumping into the run. Gentlemen of the jury, would that be such a cause, outside and independent, as would prevent this plaintiff from recovering here ? That will be a question for you to decide. But in deciding that point you must remember what the Supreme Court of this state has said in the language we have already called your attention to. That the fright of a horse is an ordinary circumstance that should be foreseen and expected by the township authorities, and the conduct of a frightened horse may be insane, unreasonable and unlooked for, is something that must also be expected. If you should decide that the circumstance which occasioned the fright of this horse was of this character, and not an outside, independent or intervening cause, then that position as to an independent cause would not be well taken.] [12] . . . .

[It is not pretended by the defendant that there were any such barriers there. The defense is that the road was in such condition that it did not require them for the safety of the traveling public, and that the cause of the accident was not the condition of the road, but the conduct of the plaintiff in making the horse uncontrollable.] [13]

Verdict and judgment for plaintiff for $675. Defendant appealed.

*Errors assigned* among others were (1) in permitting plaintiff on the stand to state the amount of damages sustained by him by reason of the accident, reciting question propounded. (2, 3) John Huffman being on the stand, in rejecting the offer of defendant to prove that in the opinion of the witness no fence or guard was necessary along the road. (4–6) In affirming plaintiff's first, second and sixth points, reciting points and answers. (7) In refusing defendant's first point, and in not affirming same, reciting point and answer. (11–13) To portions of the judge's charge, reciting same.

*R. F. Downey*, with him *H. J. Ross* and *A. A. Purman*, for appellant.—There cannot, ex necessitate rei, be any standard of the value of such damages. Attempts have been made, in times past, 1 Sedgwick on Meas. of Damages, 17, to establish such standards, but after short trial, they have been abandoned as inequitable.

Questions should not be put to a witness which by substituting his judgment for theirs virtually puts him in the place of the jury: 2 Best on Evidence, 865.

The witnesses must detail the facts and the jury are to take such facts and from them decide the extent of the plaintiff's damage: Sedgwick on Damages (7th ed.), 633.

The testimony of any witness as to the extent of damage suffered by a man for personal injuries could at best be but an estimate, a guess, an opinion: 7 Am. & Eng. Ency. of Law, 513; Baker v. Penna. Co., 142 Pa. 503.

Under all the evidence in the case, we submit that it was proper that this witness be permitted to give his opinion as to the steepness and character of this road and embankment: Beatty v. Gilmore, 16 Pa. 463; Phila. & Reading R. R. Co. v. Ervin, 89 Pa. 71; McNerney v. Reading, 150 Pa. 611; Kitchen v. Union Township, 171 Pa. 145; Kraut v. Railway, 160 Pa. 328; Graham v. Penna. Co., 139 Pa. 149.

Whilst this road may appear to be a little narrow no witness has testified that it was not amply wide to accommodate the traveling public using it. Country roads are seldom kept in repair the full width called for in the order to open. Owing to the abrupt and high hills existing in Greene county this would very frequently be almost impossible or at least very

expensive.   This seems to have been understood by the highest court of this State: Monongahela City v. Fischer, 111 Pa. 9; Kieffer v. Hummelstown Boro., 151 Pa. 304; Worrilow v. Upper Chichester Twp., 149 Pa. 40; Graham v. Penna. Co., 139 Pa. 162; Heister v. Fawn Twp., 189 Pa. 253.

The plaintiff's first point should not have been affirmed, or if affirmed at all it should have been affirmed only with a qualification.   The defect in the point is this: the proximate cause of the accident was the fright of the horse caused by the muskrat splashing in the run near the side of the road.   If that is true, then all the facts stated in the first point might be admitted and yet the plaintiff would not be entitled to recover.

It will not be necessary for us to discuss that point further, but for our authority we cite the court to the cases heretofore referred to and discussed without further comment upon them here: Kieffer v. Hummelstown Boro., 151 Pa. 304; Worrilow v. Upper Chichester Twp., 149 Pa. 40; Schaeffer v. Jackson Twp., 150 Pa. 145; Chartiers Twp. v. Phillips, 122 Pa. 601; Herr v. City of Lebanon, 149 Pa. 222; Willis v. Armstrong, 183 Pa. 184; Heister v. Fawn Twp., 189 Pa. 253.

It is elementary law that where the evidence of the first or proximate cause of the injury was admitted or undisputed, then the question of proximate cause is a question of law and not of fact: Proffatt on Jury Trials, secs. 294, 296; 2 Redfield on Railways, 197; and this principle has been decided by the Supreme Court of this state: Pittsburg and Connellsville R. R. Co. v. McClurg, 56 Pa. 294; West Mahanoy v. Watson, 112 Pa. 574; West Mahanoy v. Watson, 116 Pa. 345; Passenger R. R. Co. v. Trich, 117 Pa. 390; Behling v. Pipe Lines, 160 Pa. 359.          ⋅

As we have said before it is elementary law, when the facts are undisputed or admitted, that the question of proximate or remote cause becomes a question of law for the court to decide and they cannot shift the responsibility by leaving it to the jury to decide: Proffatt on Jury Trials, secs. 294, 296; 2 Redfield on Railways, 197; Willis v. Armstrong Co., 183 Pa. 184; Heister v. Fawn Township, 189 Pa. 253.

In Mueller v. Ross Township, 152 Pa. 400, the court below was reversed because they declined to give binding instructions.

Binding instructions should have been given as asked for

here.   If however this court should be of opinion after examining all the evidence in the case that it was a case for binding instructions they can say so as they did in Graham v. Penna. Co., 139 Pa. 149.

The old rule as to the provision to be made by township authorities against the conduct of " skittish " horses has been very much modified by later utterances of the Supreme and Superior Courts of this state : Trexler v. Greenwich Twp., 168 Pa. 214 ; Bitting v. Maxatawny, 177 Pa. 213 ; Dixon v. Butler Twp., 4 Pa. Superior Ct. 333.

The thirteenth assignment refers to the language of the court below in summing up the case to the jury.   The court having answered the points, presented by counsel, attempts to review, in brief, the claims of the plaintiff and the defenses made thereto. In such review he practically says that the only defenses set up are, that the road was in such condition that it did not require barriers for the safety of the traveling public, and that the cause of the accident was the conduct of the plaintiff in making the horse uncontrollable.   He omits entirely the most important defense, that of proximate cause, and by such omission the jury would naturally infer that the court did not give much weight to this as a matter of defense.   It is a notorious fact that some jurors watch the charge of the court to catch a cue as to what their verdict should be.   In the mind of such a juror the summing up of the court in their charge would have special weight.

The court detailing the defenses should give all of them or none.   When they omitted one of the principal grounds of defense, as was done here, it was calculated to do and may have done the defendant incalculable injury.

*Jas. E. Sayers*, with him *Ray & Axtell* and *A. F. Silveus*, for appellee.—It must appear that the admission of the testimony complained of in the first assignment could not have injured the defendant, and the court will not reverse where the error is harmless : Unangst v. Kramer, 8 W. & S. 391.

The whole question of the measure of damages in a case like the present is fully laid down in the opinion of Mr. Justice WILLIAMS in the case of Goodhart v. Penna. R. Co., 177 Pa. 1. See also Owens v. Railway Co., 155 Pa. 334, and Scott Twp. v. Montgomery, 95 Pa. 444.

The measure of damages was correctly stated: Canal Co. v. Graham, 63 Pa. 290.

We hold that from these authorities the measure of damages was correctly submitted to the jury by the learned judge below; that he did so in language more liberal to defendant than that used by the court in the last named case wherein mental suffering was included as a part of the damages, the same being excluded in the charge of the court in this case.

The court refused to admit as evidence the opinions of witnesses for the defendant as to whether the place of the accident was a safe or an unsafe road, and whether the witnesses could ride a horse up or down the bank.

Counsel admits in his argument that the case of Graham v. Penna. Co., 139 Pa. 149, is against him, and states that that case is an exception to the general rule, but does not refer to the fact, that in that case, commenting upon Beatty v. Gilmore, 16 Pa. 463, Mr. Justice MITCHELL delivering the opinion says:

The rules laid down therein as to the competency of opinions were clearly cases where the circumstances were incapable of adequate description. So understood, Beatty v. Gilmore is entirely in the line of the best authorities heretofore cited. If not to be so understood, then it must be considered as materially modified by the cases hereafter to be noticed: Platz v. McKean Twp., 178 Pa. 601; Auberle v. McKeesport, 179 Pa. 321; Musick v. Latrobe Borough, 184 Pa. 375.

It has been judicially determined that in view of the fact that the ordinary horse will at times take fright, and that his movements when frightened are wholly unreasonable and unforeseeable, it is for the jury to determine what provisions shall reasonably be made for the safety of travelers. It is the duty of the township to provide a reasonably safe highway for ordinary travel by the ordinary horse: Borough of Pittstown v. Hart, 89 Pa. 389; Trexler v. Greenwich, 168 Pa. 214; Bitting v. Maxatawny Twp., 180 Pa. 357; Yoders v. Amwell Twp., 172 Pa. 447; Burrell Twp. v. Uncapher, 117 Pa. 353.

The language of Mr. Justice McCOLLUM in Kitchen v. Union Township, 171 Pa. 145, a case very much like the one at bar, is appropriate to this case.

In such cases the consequences of the neglect of duty are natural and probable and ought therefore to be foreseen. A

like view is expressed in Horstick v. Dunkle, 145 Pa. 220, in Herr v. City of Lebanon, 149 Pa. 222, and in Township of Plymouth v. Graver, 125 Pa. 24.

There may be such a state of things, however, at a particular place, as will require the erection of a barrier, in order to secure a reasonable degree of safety for public travel: Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276.

The jury having found all the material questions in the case in favor of the plaintiff, and nothing appearing in the record that calls for a reversal, the judgment should be affirmed: Stokes v. Ralpho Twp., 187 Pa. 333.


OPINION BY BEAVER, J., July 28, 1899:

This case is not without difficulty and in some of its minor aspects is undeniably close. Viewing the end from the beginning, however, and taking into consideration the charge of the court, the answers to the points of both plaintiff and defendant and the verdict of the jury, we are of the opinion that the judgment should be sustained.

The plaintiff, riding on horseback in company with a neighbor, in going from a neighboring town to his home in the nighttime, passed over the ordinarily traveled road and, so far as the evidence shows, the only road which led to his home. The night was dark, the road at its narrowest point, according to the plaintiff's testimony, was nine and one half feet wide; according to that of the defendant, ten and one half feet. Upon the one side of the road was an abrupt embankment, caused by the excavation of the road; on the other side, a declivity terminating in a small run at the bottom. The plaintiff's horse, being next the declivity, was frightened by a splash in the stream—whether caused by the plunge of a muskrat or the drop of a stone is not known. The horse became frightened, suddenly drew back, made a plunge or two forward and went down the declivity, falling upon the person of the plaintiff and breaking the lower bones of his leg, in consequence of which he was confined to his house for several months, was put to considerable expense, was subjected to loss of time in his business and endured much physical suffering.

The plaintiff's counsel offered to ask the witness the following question: " I ask the witness to state what damage he has

suffered in his opinion as the result of this accident, taking into consideration the doctor bills he has paid and the pain he has suffered, up to the present time, and from the care that had to be taken of him, the loss to his business,—all the damages suffered by him as the result of the accident." This was objected to as incompetent and irrelevant, the objection was overruled and the evidence admitted. This constitutes the first assignment of error. It is very evident that the question did not involve nor did the plaintiff give an opinion as to the amount of his damages. He was the only person who had knowledge of all the facts and his testimony, therefore, was scarcely an opinion but a conclusion, based upon facts. Were they, however, such facts as authorized him, under the law, to state a conclusion measured by dollars and cents? Some of the reasons which he gave for the conclusion which he reached were entirely inadmissible and would undoubtedly have been ruled out, if objected to at the time. For instance, he was allowed to say, without objection, " I would not take any money to go through it again," and, after saying that his damages amounted to $4,000, he said, in reply to another question, " I could have made that amount of money, while I was lying in bed." These did not constitute a proper basis for the computation of damages, nor should he have been allowed to measure his physical suffering by a money standard. It is somewhat difficult to state the rule governing this subject in a satisfactory manner. It has not been very clearly defined, because it is not clearly definable. In Baker v. Pennsylvania Co., 142 Pa. 503, a case followed by later ones along the same line, it is said : " There is no market in which the price of a voluntary subjection of one's self to pain and suffering can be fixed. There is no market standard of value to be applied and to suggest the idea of price to be paid to a volunteer as an approximation to the money value of suffering is to give loose rein to sympathy and caprice. The true rule is that, in addition to loss of time and expenses actually incurred by the plaintiff, by reason of the injury, the jury may consider also the nature of the injury, the pain and inconvenience resulting from it and make such allowance therefor as, in view of all the attending circumstances, may seem to be just and reasonable." It would seem, however, that the jury, although expected to make an allowance in money, are not to be aided in reaching a conclusion

as to what is just and reasonable by the testimony of the plaintiff, his physician or any one in his behalf, to measure the amount of his suffering and inconvenience by a money standard. It is easy to see and point out the weak places in this rule, but it is extremely difficult to formulate one which will be more satisfactory, as has been clearly demonstrated by numerous efforts in that direction. It is not our province, however, to attempt this and we simply accept it, as laid down by our highest judicial tribunal. Mr. Justice WILLIAMS continues in the case above quoted: "The age, the health, habits and pursuits of the plaintiff must be taken into consideration in determining what is a reasonable allowance for inconvenience and suffering in any given case. The absence of a cruel or wanton purpose in the defendant must not be overlooked. From the whole case, the question is, what is a reasonable allowance for the suffering necessarily endured? This question is for the jury, subject, nevertheless, to the supervisory control of the court whose duty it is to set aside everything that is unreasonable and excessive." If this case rested upon the testimony of the plaintiff admitted under the offer above quoted, or if it were apparent that it had materially influenced the verdict, we would consider it our duty to sustain the objection and reverse the judgment; but, inasmuch as the charge of the court lays down the true rule in regard to damages, with substantial accuracy, and the jury seems to have entirely disregarded the testimony of the plaintiff in regard to the amount of his damages, we cannot see that the defendant has suffered by the error complained of. As was said in Brown v. Kolb, 8 Pa. Superior Ct. 413: "In view of the manner in which the case was submitted to the jury, the admission of the evidence was harmless, even if it was erroneous. It is too well settled to require the citation of authority that a judgment will not be reversed for an error which could have done (or evidently did) the appellant no harm." See also 1 P. & L. Dig. of Dec. 1045, pl. 1570–1573; Patterson v. Gas Co., 172 Pa. 554. The first assignment of error is, therefore, overruled.

The second assignment relates to an offer made by the defendant to prove by the neighbor who accompanied the plaintiff "that the particular part of the road where it is alleged Mr. Closser received the injuries was smooth and safe and conven-

ient for travel and that the bank on the edge of the road where it is alleged the mare turned off the road was not dangerous, so as to require the putting up of a fence or guard for the purpose of rendering the road safe for travel." This, upon objection, was rejected and constitutes the second assignment of error. Surveyors or engineers for both plaintiff and defendant made careful surveys of the road, the safety of which was involved in the controversy, at or near the point at which the accident happened. Diagrams or drawings of their work were in evidence, as were photographs showing the exact locality. The road had been described fully and clearly by the witnesses. There could have been no difficulty whatever on the part of the jury in understanding these descriptions and in seeing from the work of engineers and photographers just what the condition of the road was. An opinion as to whether it was dangerous or otherwise was, therefore, not only unnecessary but, because it was so, was also incompetent. The admissibility of such an opinion depends upon its necessity. " But, as necessity is the ground of admissibility, the moment the necessity ceases the exception to the general rule that requires of a witness facts and not opinions ceases also; hence, whenever the circumstances can be fully and adequately described to the jury and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible : " Graham v. Pennsylvania Co., 139 Pa. 149. In the further consideration of this latter case Beatty v. Gilmore, 16 Pa. 463, is discussed and explained, and the principle quoted has been followed in Platz v. McKean Twp., 178 Pa. 601, Auberle v. McKeesport, 179 Pa. 321, Musick v. Latrobe, 184 Pa. 375, Whitaker v. Campbell, 187 Pa. 113, and Wœckner v. Motor Co., 187 Pa. 206.

The offer made by the defendant, as contained in the third assignment of error, is open to the same objection as the one just referred to and was properly rejected.

We can see no error in the answers of the court to the plaintiff's first, second and sixth points which constitute the fourth, fifth and sixth assignments of error, and they require no special consideration or discussion.

The other assignments of error may all be considered under two propositions. Was the plaintiff guilty of contributory

negligence and was it the duty of the court to rule, as a matter of law, that the proximate cause of the accident was the fright of the plaintiff's horse? As to the first of these questions, it was fairly left to the jury, under adequate instructions, in the general charge and in answers to points. There was evidence upon which such submission was properly made and as to it the verdict is conclusive.

As to the latter proposition, appellant's counsel argue very strenuously and cite numerous authorities, upon which they apparently confidently rely, that it was the duty of the court to instruct the jury, as a matter of law, that the proximate cause of the accident was the fright of the plaintiff's horse and that he was not, therefore, entitled to recover. The general rule upon this subject seems to be that where the primary cause is within the control of the plaintiff or is the direct result of human agency of which the municipality has neither knowledge nor notice, or is the result of such extraordinary circumstances that the municipality could not, in the nature of things, have anticipated them or foreseen their occurrence, or where there is an intervening and independent cause these will be regarded as the proximate cause, and the plaintiff will not be allowed to recover, even if there be negligence on the part of the municipality in not establishing and maintaining proper safeguards upon a highway such as existed in this case; but where the accident results from a cause which the authorities of the township could reasonably foresee or apprehend, the fact that no guards or barriers were erected at the side of a highway such as is shown to have been maintained in this case, and the consequent dangerous character of the road will be regarded as the proximate cause and the municipality will be liable in case of a personal injury. A consideration of some of the authorities upon this subject may not be out of place. Chartiers Township v. Philips, 122 Pa. 601, was a case in which the accident was caused by the fall of the plaintiff's horse which was harnessed with a collar too small which choked it and caused the fall. "The defendant, in the fourth point, asked the court to charge the jury that, if the accident was caused by the uncontrollable struggle of a choking horse or from this cause concurring with a defect in the highway, their verdict must be for the defendant. To this the court replied: 'Refused, unless the plaintiff

by his negligence contributed to or was the cause of the uncontrollable struggle of the horse.' The vice of this answer is that the court confounded the effect of an independent cause of the accident with the effect of the plaintiff's contributory negligence and really held that it required a combination of the two, in order to relieve the defendant from responsibility for the accident. Now the contributory negligence of the plaintiff alone and by itself, if it existed, was sufficient to discharge the defendant from all liability. So also, if the accident was produced by an intervening and independent cause for which the defendant was not responsible. That too would relieve the defendant from liability and this was the meaning and substance in the point. The point should have been affirmed as it stood. It was, however, refused, unless the independent cause was combined with another and quite different agency, to wit, the plaintiff's contributory negligence, and in this there was error." In Herr v. Lebanon, 149 Pa. 222, the horse, which was drawing the omnibus in which plaintiff was riding, fell near the middle of a roadway about twenty feet wide and in good condition. The horse fell without apparent cause and, in struggling to regain its feet, went over a declivity in the road, drawing the omnibus after it and injuring the plaintiff. The proximate cause here was held to be the fall of the horse, which being without apparent cause and being under the control of the driver was such a combination of circumstances as could not possibly have been foreseen or controlled by the defendant. Schaeffer v. Jackson Twp., 150 Pa. 145, was the case of the fright of a horse at a donkey drawing a cart loaded with tin cans. The horse ran away, wrecked one of the wheels which dragged upon the ground, until it came to a hole negligently left in the highway by the township, when the occupants were thrown out and injured. Here was a combination of causes for which the township was not responsible, because neither under their control nor foreseeable,—the fright of the horse at the unusual sight of a donkey drawing a cart loaded with tin cans and the condition of one of the wheels of the vehicle which gave way in the runaway which followed the fright. The fright of the horse was here held to be the proximate cause and the township was declared not liable. In Kieffer v. Hummelstown, 151 Pa. 304, the fright of the horse was caused by the

firing of guns.   The horse upon which the plaintiff was riding being the saddle horse of his team, became frightened at the discharge of firearms in the hands of other persons and fell against a stone pile in the roadway, in consequence of which the plaintiff's leg was crushed.   Held, that the plaintiff was not entitled to recover, as the accident was caused by an extraordinary circumstance against the consequences of which the borough was not bound to take precautions.   Willis v. Armstrong County, 183 Pa. 184, was a case in which the traces of the harness by which the wagon in which the plaintiff rode was being drawn broke, the wagon being freed from the horse ran back down grade over an approach to a bridge not provided with a guard rail into the stream, resulting in personal injuries to the plaintiff.   Held, that the breaking of the harness was the efficient and proximate cause and, therefore, the plaintiff could not recover.   In the same line are Habecker v. Lancaster, 9 Pa. Superior Ct. 553, and Card v. Columbia, 191 Pa. 254.   In Heister v. Fawn Twp., 189 Pa. 253, the plaintiff endeavored to drive around cattle lying in the road.   He took the risk of so doing instead of driving them away.   One of them rose, when opposite them, frightening his horse, and the vehicle in which he and his wife were riding was precipitated down an embankment, resulting in personal injuries.   In this case a nonsuit was granted which the court below refused to take off, which was affirmed in the Supreme-Court.   The decision in this case did not rest upon the question of proximate cause but was distinctly ruled upon the ground that there was an absence of any sufficient evidence of negligence on the part of the defendant.

The facts of the case under consideration clearly distinguish it from any and all of the cases above referred to.   The accident occurred upon a dark night, the plaintiff was riding an ordinary horse which his wife and children were in the habit of driving.   It is true that there was some evidence as to his having used rather emphatic language in regard to its foolishness.   This was denied but, even if true, it would be accounted for by his excitement and the condition in which he found himself after the accident.   The accident occurred at a point at which it would have been absolutely impossible for two vehicles to pass, being, according to one witness, nine and one half feet and, according to the defendant's own testimony, ten and one

half feet wide.   The cause of the fright of the horse was one
which should have been foreseen.   A stream ran at the foot of
the declivity below the road and the plunge of an acquatic ani-
mal or the fall of a stone loosened from the roadside was such
an ordinary circumstance as should have been foreseen by the
municipal authorities.   Indeed the narrowness of the road was
such as of itself to have suggested to the authorities the neces-
sity for some provision for the safety of the traveling public.
In Herr v. Lebanon, supra, it was said: "If, therefore, in the
ordinary use of the street, one had been crowded over the bank
by the volume of the travel, by the sudden shying of his horse
or by reason of an accumulation of ice upon the roadway, the
absence of the barrier might justify a recovery, if the plaintiff
was not guilty of contributory negligence and so in part the
author of his own misfortune."   In Hey v. Philadelphia, 81
Pa. 44, the horse was frightened by a locomotive, turned and
upset the carriage and, there being no barrier on the road, fell,
with the carriage, into the river and was drowned.   Held in
this case that the failure to put up a barrier was evidence of
negligence on the part of the city, Mr. Justice Gordon, in
delivering the opinion of the court, saying: " A road may be
perfectly safe under some circumstances and very unsafe under
others.   A way of ten feet in width in the open country may
be as secure as one of ten times that width; but along the
brow of a precipice such a way would be very insecure.   Per-
haps indeed a steady, sure-footed team, handled by a cool and
skilful driver, may pass over it as securely as over the former;
but drivers of only ordinary nerve, with fractious teams, are
unsafe upon it, and it is suggested for this reason that such a
road should be provided with guards which, under ordinary
circumstances, would not be essential.   As was said per curiam
in the case of Lower Macungie Twp. v. Merkhoffer, 71 Pa.
276, ' A roadway must be kept in such repairs that even skit-
tish animals may be employed without risk or danger on it,' so
we have held that where a horse frightened and backed off
a bridge the township was responsible for the loss resulting
therefrom, because of the neglect of the supervisors in not
providing side railings by which, notwithstanding the fright of
the horse, the accident might have been prevented : Newlin
Twp. v. Davis, 77 Pa. 317.   Had this accident happened upon
an open and unrailed bridge under circumstances similar to

those exhibited by the evidence now under consideration, there could be but one opinion as to the liability of the city. In such case the proximate cause of the disaster would be so obvious that no one could avoid its observance." See also Yoders v. Amwell Twp., 172 Pa. 447. In this case, many of the authorities upon the subject are cited and commented upon and, in his opinion, Mr. Justice DEAN says: " As already noticed it cannot be questioned under the authorities that defendant might and ought to have foreseen the danger to ordinary travel from a narrow bridge, without guard rails. It is alleged, however, that the special facts take this out of the cases of ordinary and foreseeable travel. Do they? It may at once be conceded that, if the traveling public always or generally drove only very gentle and easily managed horses in daylight, at a slow gait, over very narrow bridges, such an accident as here happened would not have been the natural and probable consequence of a neglect to put up guard rails, for then the circumstances in this case would have been extraordinary ; but no such limited use of a public highway would be made in any township in the state and this the authorities well knew. That it would be traveled by night and day, by those driving gentle and spirited animals—some that would take fright, others that would not, was known to them. If, with such knowledge, this accident might or ought to have been foreseen and with reasonable care have been provided against, then was their negligence the proximate cause of the injury."

It is needless to multiply authorities. They are numerous and, when carefully read, do not in any way contradict each other. The question of the proximate cause of the accident was left to the jury. Their finding establishes the fact that the proximate cause was the narrowness of the way and the absence of guard rails and that the plaintiff was not guilty of contributory negligence. The recovery, therefore, was clearly justified and, the moderate amount of the verdict clearly showing that the plaintiff's testimony as to the amount of his damages was not seriously considered, we think the judgment entered upon the verdict should stand, notwithstanding the admission of the testimony complained of in the first assignment of error.

Judgment affirmed.

ORLADY, J., dissents.