# Whitehead *v.* Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Passenger—Electric shock—Evidence.*

1. In an action against an electric railway company by a passenger to recover damages for personal injuries alleged to have been sustained by reason of an electric shock from a charged car, the case is for the jury where the evidence for the plaintiff, although contradicted, tended to show that at the time he received the injury he showed the symptoms and appearance of one having received an electric shock, that the appearance of portions of his body afterwards indicated it, and that a hole made in his shoe was such as might have been made by an electric current; but in such a case it is reversible error for the trial judge in his charge to assume the fact that the plaintiff had received an electric shock and to put the burden upon the defendant to overcome such presumption.

2. In an accident case against a street railway company where there is nothing to show that the plaintiff was pretending to be sick, it is improper for the trial judge to suggest to the jury that the defendant was contending that the plaintiff was a pretender, and thus to prejudice the defendant corporation in the eyes of the jury.

*Negligence—Damages—Pain and suffering—Improper instructions.*

3. On the trial of an accident case it is error to charge that "Pain and suffering cannot be bought and sold like merchandise. No man would take any amount of money to subject himself to pain and suffering of the character suggested in many of the cases we try here."

Argued Oct. 24, 1910. Appeal, No. 4, Oct. T., 1910, by defendant, from judgment of C. P. No. 4, Allegheny Co., Third Term, 1907, No. 95, on verdict for plaintiff in case of William H. Whitehead v. Pittsburg Railways Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before COHEN, J.

At the trial the plaintiff testified:

"I rose up in my seat . . . . I stepped my foot for-

ward, and there was a shock right through me, and I smelt like brimstone or some other peculiar smell in my nose, and that's all I know. 'I don't know nothing more about it, until I was taken off the car. . . . When I became conscious, I was awful sick, and I had a funny taste in my mouth,—never had a taste like that before, and I wanted to vomit." He had a slight burn on his hand but no injury to his feet. The next day his leg broke out in pimples. He said that after the accident when he looked at the shoe that had touched the wheel cover "it was covered with kind of black stuff like tar; and I felt it, and the center just dropped out," leaving a hole. Frank Johnson testified that he was with the plaintiff at the time of the accident, and: "I seen Mr. Whitehead raised up off the seat; . . . . grabbed for that brass handle . . . . and placed his foot out this way, on top of the cover, and he jerked back this way (indicating), and showed his eyes like." He then went on to say that he took hold of Whitehead and asked him what was the matter, but received no answer, and they then dropped back into the seat together; that when Whitehead came to his senses, he said to him, "What's the matter Bill?" and the plaintiff replied, "I've got shocked, and I am hurt;" that Whitehead's arm was straight out and his foot was on the top of the cover at the time he showed the evidences of shock. This witness said that he had worked about electricity for about six years, and that he had seen and had knowledge "about people being shocked with electricity." Further, that he had received shocks himself. He then said: "I think his (plaintiff's) appearance there was the way a man would act if he got shocked." Another witness, who was a passenger on the car, testified: "Mr. Whitehead . . . . stuck out his hand to catch hold of the handle-bar with, and put his foot on the plate, and it just jerked him back as far as his arm would let him; it would out stiff; he was leaning against me at that time."

The masseur who treated the plaintiff said that there were some red spots on his leg, and that he had "seen

about the same character of spots in cases that I have treated that were struck by lightning." Dr. Gardner, a physician, who treated the plaintiff, described his injuries and said: "His trouble is due to receiving a shock." This doctor admitted that he had made no special study of nervous trouble. When asked the question, "Would any shock, or the imagination that a shock had been received, act as a hypnotic suggestion, and the patient thereupon take on all the symptoms of one paralyzed? . . . ." He replied that it might, but he said that he thought the plaintiff's condition was "the result of this shock." He said that when he called upon the plaintiff a few days after the accident, he had not found any injury or burn on the foot, but that he had found a slight mark on the right hand. Dr. Purman, who had been sent to examine Whitehead by the defendant company, was called by the plaintiff. He said that the case was one of the most remarkable that he had ever seen. "If it had been a case of ordinary traumatic hysteria . . . . both limbs would have been injured, but here if the man received an electric current which was sufficient to paralyze one leg, it would have to travel not only up the nerve, but up the cord and go out his other hand, where his hand was placed, to make the current; he must make a circuit, you know, and the fact that nothing else was affected but one leg is the reason why I say that it was so remarkable. Now the only explanation of that was that the charge of electricity was so violent, so strong, that it not only destroyed the life of the nerve instantaneously, but coagulated the albumen in the tissues." When asked on cross-examination, "If Mr. Whitehead had received no . . . . electric shock, but imagined that he had received a shock, might not those symptoms develop?" He replied, "Oh, yes, they might, . . . . Anything might develop." But he further said, that he did not regard it as probable that they would. When he was asked the question, "If it was impossible for him (the plaintiff) to have received an electric shock, what would you say then?" He replied,

"The case would be an 'entire mystery,'" and, "it would belong to those things we know nothing about."

This was the substance of the testimony for the plaintiff. However, one of the experts produced by the defendant testified that he was a professor of electric practice at the Carnegie Technical School, and had been for many years with the Westinghouse and another electric company. Upon an inspection of the plaintiff's shoe, he said, "The hole looks to me like that of a hole made by an electric current." He further said that the leather might have been burned by an electric current to the extent shown on the shoe without "necessarily" having any effect upon the nails. Joe Speiler, a witness for the defendant, testified that the car had been turned over to him after the accident, and that the night foreman had then said, "this car is charged." No direct testimony was produced to show that the car was defective in construction, or that the electrical appliances were out of order, or that the wheel or handle was charged, or that there had been any demonstration by way of flash, or flame, or heat at the time of the accident.

The defendant showed by its employees that the car had been examined immediately after the accident and found to be in good condition; that it was thereupon put right back into commission and has been in use ever since. A number of electrical experts testified that they had examined and tested the car and found nothing defective about the electric appliances; that in their opinion it would have been impossible for the handle grasped by the plaintiff or the cover upon which he had put his foot to have become charged, because they were insulated from everything else; and they all said that they could not conceive how it was possible for the plaintiff to have received an electrical shock in that way. These experts, excepting the one before referred to, testified that the hole in the shoe did not look like an electric burn, as such a burn would have fused the nails in the sole; and they all said that if a man had received a sufficient electric

current through his body to have made such a burn it would have paralyzed a greater area, or killed outright. A number of medical doctors testified that in their opinion the plaintiff was suffering from hysterical paralysis; that this trouble could be due to an actual physical injury, or to the belief that one had suffered such an injury when in point of fact he had not. Most of these doctors said that an electric current passing through the body would have left marks on the surface, but one of them said that there was no absolute rule to that effect.

Verdict and judgment for plaintiff for $7,500. Defendant appealed.

*Errors assigned* (1) refusal to give binding instructions for defendant; (2) refusal to enter judgment non obstante veredicto for the defendant; (3) entering judgment on the verdict for plaintiff; (4–6) instructions in the charge assuming the fact that the plaintiff had been injured by an electric shock and placing the burden upon the defendant to overcome that presumption.

*William A. Challener*, with him *Clarence Burleigh*, for appellant.—There was no case for the jury: Cline v. Pittsburg Rys. Co., 226 Pa. 586.

*W. B. Rodgers*, with him *W. E. Newlin*, for appellee, cited: Alexander v. Nanticoke Light Co., 209 Pa. 571; Whitehouse v. Rys. Co., 36 Pa. Superior Ct. 581; Lyttle v. Denny, 222 Pa. 395; Thomas v. R. R. Co., 148 Pa. 180; Herstine v. R. R. Co., 151 Pa. 244.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1911:

On September 10, 1906, the plaintiff, a passenger on one of the defendant's electric street railway cars, arose from his seat to alight, and put his foot on a metal wheel cover, at the same time grasping a brass hand-hold affixed to the outside of the wooden upright or stanchion of the

car.  At that moment he received a shock of some character, either electric or mental, which knocked him senseless.  Since then he has practically lost the entire use of his right leg from the foot to the groin, and has a sharply defined area of anæsthesia and analgesia in that leg; the right arm being affected to some degree in the same way.

The plaintiff alleged that he was suffering from the results of an electric shock, while the defendant contended that the plaintiff was suffering from hysterical paralysis due to mental shock, and that there was no sufficient evidence that the plaintiff received an electric shock.  We cannot say that there was not sufficient evidence to justify the submission of that question to the jury.  It is true that there was no rebuttal of the testimony given by the experts of the defense, and that the plaintiff's experts gave the jury little assistance.  But, in view of the plaintiff's testimony and the other evidence in the case which made in his favor, together with all the surrounding circumstances, the court did not commit error in allowing the question to go to the jury: Devlin v. Beacon Light Co., 198 Pa. 583.  Whether or not, upon a consideration of the weight of the evidence, the lower court, in the wise exercise of its discretion, ought to have sustained the verdict, is another question: Dinan v. Supreme Council, 210 Pa. 456.  However, a new trial will have to be granted upon grounds which we are about to discuss, and in the next presentation of the case that point may not arise. The first two assignments of error are dismissed.

In submitting the case to the jury, the court below fell into the error of assuming the fact that the plaintiff had received an electric shock.  That was one of the principal issues in the case, but the trial judge in his charge practically stated that there was a presumption that the plaintiff had been injured by an electric shock, and put the burden upon the defendant to overcome that presumption.  This was error.  The charge should have been that if the jury believed the plaintiff had received an electric shock, then the burden was upon the defend-

ant company to show that the shock did not come from its negligence. The last four assignments of error are sustained.

Since the case must be retried, there are certain points, not assigned for error, to which we deem it our duty to call attention. In his charge the learned trial judge said: "If this plaintiff is merely pretending to be sick, and is not sick, if for all these years he has been standing in the attitude of a cripple, when in fact he is as strong as he ever was, . . . . he is not entitled to your consideration for a moment, nor to your verdict." There was nothing in the evidence to suggest the idea that the defendants were contending that the plaintiff was a pretender, and the manner in which this part of the charge was phrased might well have prejudiced the defendant corporation in the eyes of the jury. Again, the learned judge stated: "Pain and suffering cannot be bought and sold like merchandise. No man would take any amount of money to subject himself to pain and suffering of the character suggested in many of the cases we try here." We reversed upon an assignment complaining of language similar to this in Baker v. Penna. Co., 142 Pa. 503. In this connection, also see the opinion filed to-day by our Brother STEWART in the case of McLane v. Pittsburg Railways Co., ante, p. 29. Finally, we suggest that this is peculiarly a case where the jury should be given the benefit of instructions upon the subject of expert testimony and upon the manner of weighing the evidence.

The judgment is reversed with a venire facias de novo.